# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| PEGGI NORTHWICK, | ) | No. 72517-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ANDREW LONG, | ) | |
| | ) | |
| Petitioner. | ) | FILED: November 30, 2015 |
| | ) | |

LEACH, J. — A commissioner of this court granted Andrew Long's request for discretionary review of the trial court's order denying his motion to dismiss for insufficient service of process. Long challenges the trial court's denial of his request for an evidentiary hearing, its consideration of the process server's testimony, and the denial of his motion. The trial court did not abuse its discretion by denying Long's untimely request for an evidentiary hearing or by considering the challenged evidence. Because Northwick presented prima facie proof of proper service and Long did not present clear and convincing evidence to show otherwise, we affirm the trial court and remand for further proceedings.

## FACTS

On March 6, 2014, Peggi Northwick started this lawsuit by filing a summons and complaint for damages against Andrew Long in King County Superior Court. The complaint alleged that Long was the at-fault driver in a car

collision. Northwick served Long by leaving copies of the summons and complaint with his father at a Snohomish, Washington, address. Records show Long's car registered to this address.

Long filed a motion to dismiss, claiming insufficient service of process. Long supported his motion with a declaration from his father, Hoeun Long.[1] Long did not provide his own declaration. In Hoeun's declaration, he said that Andrew moved out some time before December 25, 2013. Hoeun also said that a man came to his house on March 8, 2014, and that Hoeun told the man that Andrew was his son. Hoeun said that the man did not ask if Andrew lived with him at that time. Hoeun also stated that the man did not request, nor did Hoeun offer to tell him, Andrew's current address. Hoeun also said in his declaration that Andrew had his own car in his name, did not receive mail at the Snohomish house, and was working and going to school in Texas.

Northwick deposed her process server, Randy Bennett, on July 21, 2014. Bennett testified that on March 8, 2014, he went to Andrew's last known address, in Snohomish, Washington, to serve the summons and complaint. Bennett spoke to Hoeun at the door. Hoeun identified himself as Andrew's father and said Andrew lived there. When Bennett told Hoeun that he had a delivery for Andrew, Hoeun told Bennett that Andrew was not home but would be home very

---

[1] Because the parties share the same last name, we refer to them by their first names for clarity. We intend no disrespect.

late that night. Bennett explained to Hoeun that he was dropping off legal documents, and Hoeun agreed to deliver them to Andrew. According to Bennett, Hoeun then again confirmed that Andrew lived at the address.

Bennett left the house, stopped approximately a half mile away, and wrote all of his notes about the conversation on his messenger slip. The declaration of service was filed with the clerk of the trial court on March 24, 2014. At his deposition, Bennett testified that getting multiple confirmations of the residence of the defendant from a coresident was his typical practice. Bennett also testified about his review of Andrew's vehicle identification from the Washington Department of Licensing (DOL) database, a TransUnion Locate report, and a U.S. Postal Service trace which confirmed that Andrew resided at the Snohomish address as late as May 8, 2014.

Hoeun says he did not give the documents to Andrew. Andrew's defense counsel disclosed Andrew's Texas address in a letter dated July 8, 2014, responding to efforts from Northwick's counsel to depose Andrew.

Andrew filed a motion to dismiss on June 18, 2014. After hearing oral argument, the trial court denied the motion. On September 2, 2014, the trial court denied Andrew's motion for reconsideration and his request for an evidentiary hearing. Andrew asked for discretionary review.

## STANDARD OF REVIEW

We review the sufficiency of service of process de novo.[2] As a consequence, we also review evidentiary rulings on admissibility made in connection with this issue de novo.[3] We review for abuse of discretion a trial court's denial of a request for an evidentiary hearing.[4] A trial court abuses its discretion when it makes a manifestly unreasonable decision or bases it on untenable grounds.[5]

## ANALYSIS

Andrew makes three claims: (1) that he was not properly served, (2) that the trial court should not have considered parts of Bennett's deposition testimony, and (3) that the trial court should have conducted an evidentiary hearing before ruling on his motion.

Service of Process

Andrew first challenges the sufficiency of service of process. A plaintiff may serve process personally on a defendant or by leaving a copy of the summons at the defendant's usual abode with a person of suitable age and

---

[2] Scanlan v. Townsend, 181 Wn.2d 838, 847, 336 P.3d 115 (2014).
[3] Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998); Keck v. Collins, ___ Wn.2d ___, 357 P.3d 1080, 1085 (2015).
[4] Woodruff v. Spence, 76 Wn. App. 207, 210, 883 P.2d 936 (1994).
[5] In re Det. of Duncan, 167 Wn.2d 398, 402, 219 P.3d 666 (2009).

discretion who resides there.[6] Proper service of the summons and complaint provides the court with personal jurisdiction over a party.[7]

When a defendant challenges service of process, the plaintiff has the initial burden of proof to establish a prima facie case of proper service.[8] A plaintiff can establish a prima facie case by providing a declaration of a process server, regular in form and substance.[9] Then the challenging party must show by clear and convincing evidence that service was improper.[10]

Here, the parties agree that Bennett did not serve Andrew with a copy of the summons and complaint. Therefore, Northwick must show that Bennett completed proper substitute service by serving at Andrew's usual place of abode a person of suitable age and discretion who resides at that address.[11] The term "usual place of abode" means "'such center of one's domestic activity that service left with a family member is reasonably calculated to come to one's attention

---

[6] RCW 4.28.080(15).

[7] Woodruff, 76 Wn. App. at 209-10 (citing Lee v. W. Processing Co., 35 Wn. App. 466, 469, 667 P.2d 638 (1983)).

[8] Gross v. Sunding, 139 Wn. App. 54, 60, 161 P.3d 380 (2007) (citing Woodruff, 76 Wn. App. at 209-10).

[9] State ex rel. Coughlin v. Jenkins, 102 Wn. App. 60, 65, 7 P.3d 818 (2000).

[10] Woodruff, 76 Wn. App. at 210.

[11] Streeter-Dybdahl v. Nguyet Huynh, 157 Wn. App. 408, 412-13, 236 P.3d 986 (2010).

within the statutory period for [the] defendant to appear.'"[12] The parties dispute the location of Andrew's abode at the time Northwick attempted service.

Andrew agrees Northwick met her initial prima facie burden with Bennett's declaration of service but contends Hoeun's declaration demonstrated it was "highly probable" that Andrew did not reside at the Snohomish address, rebutting any presumption created by the declaration of service.[13] Andrew argues that the burden then shifted back to Northwick to ultimately demonstrate proper service by a preponderance of the evidence that Andrew resided at the Snohomish address. Northwick responds that Andrew did not produce clear and convincing evidence that proper service did not occur. As a result, Andrew failed to satisfy his burden under the burden-shifting analysis.

To support her position, Northwick cites cases where the defendant failed to produce clear and convincing evidence, including no credible evidence of a different place of usual abode. In State ex rel. Coughlin v. Jenkins,[14] Division Two of this court concluded that affidavits from the defendant's mother and ex-wife, stating that the defendant did not live at the place where substitute service occurred, did not amount to clear and convincing evidence of improper service of process when weighed against evidence of mail to and from that address which

---

[12] Streeter-Dybdahl, 157 Wn. App. at 413 (alteration in original) (internal quotation marks omitted) (quoting Sheldon v. Fettig, 129 Wn.2d 601, 610, 919 P.2d 1209 (1996)).

[13] In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986).

[14] 102 Wn. App. 60, 64-65, 7 P.3d 818 (2000).

demonstrated he did reside there. And in Woodruff v. Spence,[15] the court held that the defendant failed to establish that service was insufficient, even though the defendant did establish he was not at the residence on the date of service and denied ever actually receiving the documents served.

Northwick also contrasts Andrew's evidence with evidence a court has found clear and convincing. In Gross v. Evert-Rosenberg,[16] the court held that for purposes of substitute service, a house owned by the defendant but leased to her daughter and son-in-law was not the defendant's house of usual abode because the defendant produced evidence that she had established a new address by notifying the post office, obtaining a new driver's license, and informing her regular creditors. Andrew did not produce any similar evidence.

Andrew contends that Northwick's evidence, the declaration and deposition of Bennett, and the information from the subsequent investigation merely show that Andrew did not promptly update his contact information with the post office and DOL. Andrew asserts that these reports failed to demonstrate that he was actually living at the Snohomish address on March 8, 2014. Andrew uses two Washington cases to support his argument that this type of evidence is insufficient to establish that a particular home is a defendant's abode. In Streeter-Dybdahl v. Nguyet Huynh,[17] this court noted, "[T]he use of a particular

---

[15] 88 Wn. App. 565, 570-71, 945 P.2d 745 (1997).
[16] 85 Wn. App. 539, 541, 543, 933 P.2d 439 (1997).
[17] 157 Wn. App. 408, 414, 236 P.3d 986 (2008).

address for a limited purpose is not a critical factor in determining a center of domestic activity." Similarly in Vukich v. Anderson,[18] the Division Three of this court held that the defendant's unrefuted evidence was clear and convincing when he presented evidence of a California bank account, home purchase, lease, and tenant's statement showing he resided elsewhere.

Northwick distinguishes these cases. Northwick points out that in cases in which the court found clear and convincing evidence of improper service, the defendant, unlike Andrew, presented substantial evidence that would have been available to a reasonably diligent plaintiff.[19]

We agree with Northwick. Northwick, through a registered process server, served Andrew within the statutory period at his last known address. Although Andrew presented a declaration from his father stating that Andrew had not lived at the Snohomish address since December 2013, he did not present his own declaration. Northwick responded with evidence challenging Hoeun's credibility: evidence that Hoeun told the process server that Andrew would be home later that same evening and that Andrew lived at the address. Northwick also presented evidence that Andrew's address on file with the post office and the

---

[18] 97 Wn. App. 684, 690-91, 985 P.2d 952 (1999).

[19] Vukich, 97 Wn. App. at 690-91 (defendant presented unrefuted evidence of other residence included a lease, tenant's statement, California bank account, California home purchase, and mail forwarding); Streeter-Dybdahl, 157 Wn. App. at 411-12 (defendant's evidence of other residence included property records showing she purchased a different residence almost eight months before service was attempted at the old address).

DOL at the time of service was the Snohomish address. Andrew produced no similar evidence for a different address. He provided no documentation relating to housing, banking, and other activities highly probative of domestic activity linking him to a different address.[20] When a party fails to produce relevant evidence within its control without satisfactory explanation, the trial court is permitted to draw the inference that the evidence would be unfavorable to the nonproducing party.[21]

We conclude that Andrew failed to prove by clear and convincing evidence that service was improper.

Hearsay

Andrew next asserts that the trial court improperly relied on Bennett's testimony about his conversation with Hoeun because it constituted inadmissible hearsay that the trial court should not have considered.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[22] An error in admitting evidence that does not prejudice the defendant is not grounds for reversal.[23] "[E]rror is not prejudicial unless, within

---

[20] Evert-Rosenberg, 85 Wn. App. at 543; Streeter-Dybdahl, 157 Wn. App. at 414; Vukich, 97 Wn. App. at 690-91.

[21] Lynott v. Nat'l Union Fire Ins. Co., 123 Wn.2d 678, 689, 871 P.2d 146 (1994).

[22] ER 801(c).

[23] State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980).

reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred."[24]

Although the trial court indicated in its ruling that it was not relying on Bennett's statements in the deposition about Hoeun for the truth they asserted, Andrew contends that in making credibility determinations, the trial judge had to rely on the truth of Bennett's statements. Andrew analogizes these statements to those in Ensley v. Mollmann.[25] In that case, this court concluded that portions of a deposition, in which a witness said a bartender told him that the defendant had glassy eyes and should not be served, were inadmissible hearsay.[26]

But in Ensley, the bartender's statements were being offered to prove that the defendant showed obvious signs of intoxication. However, here, Hoeun's statements were not offered to prove the truth of the matter asserted. Hoeun's statements were used to show their effect on Bennett's reasoning. Bennett told Hoeun that he had a delivery for Andrew; Hoeun said that Andrew would be home later that evening and confirmed, more than once, that he lived there with Andrew. Northwick did not offer Bennett's testimony about Hoeun's statements to prove that Andrew was returning that night, or that Hoeun lived there with Andrew, but to prove the effect that it had on the listener: that Bennett "didn't

---

[24] State v. Tharp, 96 Wn.2d 591, 599, 637 P.2d 961 (1981); accord State v. Halstien, 122 Wn.2d 109, 127, 857 P.2d 270 (1993).
[25] 155 Wn. App. 744, 230 P.3d 599 (2010).
[26] Ensley, 155 Wn. App. at 748, 751-55.

-10-

need to ask his address because [Hoeun] said he lived there and said he would be back that night." In his deposition, Bennett testified that had Hoeun said Andrew moved away, Bennett would have asked for another address.

Also, Hoeun denied that Bennett even asked if Andrew resided at the Snohomish address. In evaluating Hoeun's credibility, the court could consider which witness's version of the conversation comported with ordinary human experience and conclude that an experienced process server would likely ask if a person resided at an address before leaving process there. Thus, we conclude that Bennett's statements about his conversation with Hoeun were not hearsay because the statements were not offered for the truth of the matter they asserted.

Evidentiary Hearing

Andrew contends that the trial court abused its discretion when it weighed credibility without holding an evidentiary hearing when presented with a legitimate conflict in the evidence.

Andrew argues that the trial court unfairly compared Hoeun's declaration to Bennett's deposition because Hoeun "could not have anticipated the manner in which his declaration would be questioned." Andrew asserts that because the trial court had to make a credibility determination between Hoeun and Bennett, it must conduct a fact-finding hearing, and failing to do so was an abuse of discretion.

Northwick asserts that the trial court properly weighed the evidence. Additionally, Northwick points out that Andrew's counsel had the opportunity to cross-examine Bennett at the deposition, whereas Northwick could not cross-examine Hoeun. Andrew replies that the trial court abused its discretion when it relied on the "subjective beliefs" of Bennett instead of holding an evidentiary hearing. Additionally, Andrew argues that the court, in acting as the fact-finder on the issue of service, needed to hear the testimony of the witnesses to properly weigh credibility and resolve disputed facts.[27]

The trial court, in its discretion, may direct that an issue raised by motion be heard on oral testimony if needed to make a just determination of the outcome.[28] The party challenging the trial court's decision not to conduct a hearing must make a clear showing of abuse of discretion.[29] In some circumstances, a trial court may abuse its discretion by failing to hold an evidentiary hearing.[30]

Although the trial court could have held an evidentiary hearing with live testimony, the trial court had discretion not to do so. In Woodruff, Division Three of this court reversed the judgment of the trial court and remanded the case for

---

[27] State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).
[28] Woodruff, 76 Wn. App. at 210; CR 43(e)(1).
[29] Farmer v. Davis, 161 Wn. App. 420, 430, 250 P.3d 138 (2011) (citing In re Det. of Schuoler, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986)).
[30] Woodruff, 76 Wn. App. at 210.

an evidentiary hearing on the issue of service.[31] The defendant filed an affidavit stating that he was not at his residence on the day of the alleged service.[32] The defendant also provided affidavits from two other individuals who were at the address that day and said they did not see a process server.[33] The court found that the defendant's affidavits presented an issue of fact that could be resolved only by determining the credibility of the witnesses.[34]

Unlike in Woodruff, where the defendant presented three sworn documents attesting to the defendant's whereabouts, Andrew did not present his declaration and relied exclusively on one from his father. More significantly, unlike Woodruff, Andrew had the opportunity to cross-examine the plaintiff's primary witness, Bennett, and present any weakness in his testimony to the court. He did not challenge the veracity of Northwick's documentary evidence. He fails to show how the lack of an evidentiary hearing prejudiced him or was needed by the trial court to evaluate the credibility of the two primary witnesses. Andrew completely controlled the evidence produced by Hoeun and had a full opportunity to discover and test Bennett's testimony.

We also find important the timing of Andrew's request. Andrew did not ask for an evidentiary hearing until after the trial court ruled against him.

---

[31] Woodruff, 76 Wn. App. at 210.
[32] Woodruff, 76 Wn. App. at 209.
[33] Woodruff, 76 Wn. App. at 209-10.
[34] Woodruff, 76 Wn. App. at 210.

Apparently, Andrew thought the trial court record was adequate until it did not produce the result he desired. Under the facts of this case, the trial court did not abuse its discretion by not holding an evidentiary hearing.

CONCLUSION

Because Northwick proved her prima facie case and Andrew did not demonstrate by clear and convincing evidence that service was improper, the trial court properly denied the motion to dismiss. The trial court appropriately considered Bennett's statements about his conversation with Hoeun because Northwick did not offer them to prove the truth of the matter asserted. Because the trial court had a sufficient record to evaluate witness credibility, Andrew cannot show prejudice from the lack of an evidentiary hearing, and Andrew waited too long to request one. The trial court did not abuse its discretion by denying his untimely request. Thus, we affirm the trial court and remand for further proceedings.

Leach, J.

WE CONCUR:

Trickey, J.

Spearman, C.J.