# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JPRD INVESTMENTS, LLC, a Washington limited liability company, | No. 80407-3-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| DAWIT TEFFERI, individually and the marital community comprised of DAWIT TEFFERI and JANE DOE TEFFERI, husband and wife, | |
| Appellant. | |

APPELWICK, J. — Tefferi argues the trial court erred in denying his motion to vacate a default judgment obtained against him by a debt collection agency. He argues the judgment is void for lack of personal jurisdiction due to insufficient service. Further, he argues the trial court erred in denying his motion to return funds garnished by JPRD because the underlying judgment was void. Both parties request attorney fees on appeal. We affirm.

## FACTS

This case arises from a default judgment on a credit card debt that JPRD Investments LLC (JPRD) obtained against Dawit Tefferi.

On March 4, 2008, JPRD purchased the right to collect on Tefferi's credit card balance. That month, JPRD sent two letters addressed to Tefferi at a house

he owned in Seattle.[1]  Neither letter was returned as undeliverable nor did the United States Postal Service provide JPRD with a forwarding address.  Tefferi did not respond to the letters.

On May 28, 2008, JPRD served a summons and complaint for the credit card balance on Tefferi at the Seattle house.  The process server left the documents with an "Alex Doe," whom he identified as a "co[-]resident who refused to give his last name."

Tefferi disputes that he resided at the house at the time and claims he rented it to tenants.  Tefferi did not produce any documentation evidencing a rental agreement or identifying any claimed tenants.  Tefferi asserts that he lived in Washington, D.C., from 2006 until 2013.  He supported this assertion with letters from his former property manager and employer in the D.C. area confirming his employment and tenancy at the time of service.

On July 30, 2008, JPRD obtained a default judgment against Tefferi.  On or about April 3, 2009, JPRD scheduled supplemental proceedings with Tefferi and posted them at the Seattle house.  Three days later, Tefferi telephoned JPRD to discuss the proceedings.  JPRD then garnished Tefferi.

Shortly after the garnishment, Tefferi hired an attorney to discuss a settlement.  JPRD argued because the attorney did not controvert the garnishment or move to vacate the judgment, Tefferi had waived his ability to seek return of the funds.

---

[1] JPRD asserted at oral argument that it complied with postal regulations. We note that their compliance is uncontested, but we are unable to locate further documentation of that compliance in the record.

In 2012, JPRD again garnished Tefferi. Tefferi signed and submitted an exemption claim. He listed his address as the Seattle house on the form and envelope.

In 2019, Tefferi filed a motion to vacate judgment and return the garnished funds. Tefferi stated he had returned to Seattle and had only recently learned the funds taken from his account were a garnishment.

At the hearing on Tefferi's motion, the court noted the unappealed notice of service from 2008. It declined to order an evidentiary hearing, as the process server would likely have no memory of serving Tefferi 10 years later. It concluded there was enough evidence to find Tefferi had been properly served.

The trial court entered an order denying Tefferi's motion to vacate judgment and return funds garnished by JPRD.

Tefferi appeals.

## DISCUSSION

First, Tefferi argues the trial court erred in denying his motion to vacate the default judgment because it was void for lack of personal jurisdiction due to improper service. Second, he argues the writ of garnishment should be quashed and his funds returned with interest. Finally, both parties argue they are entitled to attorney fees and costs on appeal should they prevail.

I. Motion to Vacate

A default judgment entered without proper jurisdiction is void. Ahten v. Barnes, 158 Wn. App. 343, 349-50, 242 P.3d 35 (2010). Courts have a mandatory, nondiscretionary duty to vacate void judgments. Id. at 350. So, a trial court's

3

decision to grant or deny a CR 60(b) motion to vacate a default judgment for want of jurisdiction is reviewed de novo. Id. There is no time limit to bring a motion to vacate a void default judgment. Id.

Personal service of the summons and complaint is required to establish the court's personal jurisdiction over the defendant. CR 4(d)(2); Sutey v. T26 Corp., 13 Wn. App. 2d 737, 748-49, 466 P.3d 1096, review denied, 196 Wn.2d 1026 (2020). When a defendant challenges service of process, the plaintiff has the initial burden of proof to establish a prima facie case of proper service. Northwick v. Long, 192 Wn. App. 256, 261, 364 P.3d 1067 (2015). A plaintiff can establish a prima facie case by providing a declaration of a process server, regular in form and substance. Id. Then the challenging party must show by clear and convincing evidence that service was improper. Id. A facially correct return of service is presumed valid. Woodruff v. Spence, 88 Wn. App. 565, 571, 945 P.2d 745 (1997).

Proper service requires the plaintiff to serve the defendant personally or by leaving a copy of the summons at the defendant's "house of his or her usual abode with some person of suitable age and discretion then resident therein." RCW 4.28.080(16).

Here, JPRD provided the declaration of a process server stating that an "Alex Doe" was served with a copy of the summons and complaint. He was listed by the process server as Tefferi's "co[-]resident."

Tefferi acknowledges that where a facially valid declaration of service has been made, the burden of proof normally shifts to the party challenging service. But, quoting Farmer v. Davis, he argues this rule is meant to prevent "judgments

from contrived attack at a time when the attack may be hard to contradict if the memory of the plaintiff's witness to the service has faded." 161 Wn. App. 420, 429, 250 P.3d 138 (2011). He argues none of the facts observed by JPRD's process server are in question and the declaration does not allege the service was given to Tefferi.

However, the declaration does list an "Alex Doe" as his "co[-]resident," a fact Tefferi disputes. And, as the trial court noted, it would be unlikely that the process server would be able to recall over a decade later what "Alex Doe" had said to indicate that he and Tefferi both resided at the Seattle house at that time. This foreclosed the usefulness of other potential actions the court might take, such as holding an evidentiary hearing. The policy considerations at the heart of the burden shifting rule still apply to the facts at issue here.

We conclude that by providing a declaration of its process server, JPRD established a prima facie case that service was proper. So, in order to prevail, Tefferi must demonstrate by clear and convincing evidence that "Alex Doe" was not served as co-resident at Tefferi's usual place of abode.

The term "usual place of abode" is to be liberally construed to effectuate service and uphold jurisdiction. Sheldon v. Fettig, 129 Wn.2d 601, 609, 919 P.2d 1209 (1996). It means such center of one's domestic activity that service left with a family member is reasonably calculated to come to one's attention within the statutory period for the defendant to appear. Id. at 610.

Tefferi argues despite owning the Seattle house, it was not his center of domestic activity when JPRD purported to serve him in May 2008. Tefferi points to "ample direct evidence" of his new center of domestic activity in Washington, D.C., including a utility bill, a lease agreement, and a letter confirming his employment.

It is possible for a defendant to have more than one house of abode under RCW 4.28.080(16). In Sheldon, our Supreme Court held that while "most people generally maintain only one house of usual abode for service of process purposes, we recognize under certain circumstances a defendant can maintain more than one house of usual abode." 129 Wn. 2d at 611.

Tefferi argues Sheldon is distinguishable. Defendant Fettig was a flight attendant who maintained a home in Chicago. Sheldon, 129 Wn. 2d at 612. She also received mail and calls at her parents' Spokane home, where she resided almost one week out of each month. Id. at 605-06. The court held these facts, along with her "highly mobile" profession, resulted in her maintaining more than one house of usual abode. Id. at 612.

Tefferi argues his circumstances are nothing like Fettig's. Unlike an adult child who sometimes resides in his or her parents' home, the Seattle house was a "rental house" he did not share with his "tenant." He argues there is no evidence of his co-residency with "Alex Doe."

Still, the declaration of the process server, which is valid on its face, declared "Alex Doe" to be a co-resident of Tefferi's at the time of service. Tefferi offered no proof that he in fact rented the house to anyone at the time of service.

6

Nor did he provide any evidence indicating who "Alex Doe" was in order to dispute that Alex could be properly served or Alex's status as his "co-resident."

The 2008 letters JPRD sent to the Seattle house were not returned and no forwarding address was provided. And, Tefferi does not dispute that three days after supplemental proceedings were posted at the Seattle house in 2009, he contacted JPRD. This occurred while Tefferi asserts he was still living in Washington, D.C., under similar circumstances to 2008. It would appear that he was aware of correspondence addressed to him by JPRD at the Seattle house.

Tefferi has not foreclosed the possibility of a co-residency with "Alex Doe" or circumstances under which he could be found to have more than one house of usual abode. Although there is evidence that Tefferi resided in Washington, D.C., Tefferi has not proven defective service by the heightened burden of clear and convincing evidence.

We affirm the order denying Tefferi's motion to vacate the default judgment and decline to order JPRD to return Tefferi's garnished funds with interest.

## II. Attorney Fees

Both parties requested reasonable attorney fees should they prevail on appeal. Since Tefferi does not prevail, we deny his claim. JPRD claims fees under the original cardholder agreement.

Attorney fees on appeal can be awarded if law, contract, or equity permits an award of fees. Hwang v. McMahill, 103 Wn. App. 945, 954, 15 P.3d 172 (2000); RAP 18.1(a). Where a contract specifically provides that attorney fees and costs, incurred to enforce the provisions of the contract, shall be awarded to one of the

7

parties, the prevailing party is entitled to reasonable attorney fees, regardless of whether the prevailing party is specified in the contract. RCW 4.84.330. "A party may be awarded attorney fees based on a contractual fee provision at the trial and appellate level." Renfro v. Kaur, 156 Wn. App. 655, 666-67, 235 P.3d 800 (2010).

The original default judgment concerns credit card debt JPRD obtained against Tefferi. That debt arises from and is subject to the underlying cardholder agreement, the substance of which has not been challenged.[2] The order of default judgment provided that judgment was to bear interest at 23.99 percent, as called for in the cardholder agreement. The same agreement provided, "If we refer collection of your account to a lawyer who is not our salaried employee, you will have to pay our attorney[] fees plus court costs or any other fees, to the extent permitted by law."

JPRD asserts that an award of JPRD's costs and attorney fees is warranted under the cardholder agreement despite default judgment being entered in 2008 "because provisions in a contract or a note providing for attorney fees do apply until the judgment is final." Such provisions are construed as entitling a prevailing party to reasonable attorney fees for all services required to prosecute the action to its "ultimate conclusion." Puget Sound Mut. Sav. Bank v. Lillions, 50 Wn.2d 799, 807, 314 P.2d 935 (1957).

---

[2] At oral argument, counsel mentioned a case, EGP Investments, LLC v. Frear, No. 35734-1-III, slip op. at 6 (Wash. Ct. App. April 2, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/357341_unp.pdf, where this court in the absence of a signed agreement declined to grant fees provided for in a cardholder agreement to a debt collection agency.

We award JPRD its reasonable fees and costs on appeal subject to its compliance with RAP 18.1(d).

We affirm.

_Appelwick, J._

WE CONCUR:

_Chun, J._            _Verellen, J._