# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58605-3-II |
| Respondent, | |
| v. | |
| CIERRA BROOKE LARSEN, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Cierra Larsen appeals the trial court's denial of her motion to withdraw her guilty plea. She argues her plea was involuntary because she was not adequately advised of the direct consequences of that plea, including her right to request a concurrent sentence and advocate for a low-end standard range sentence. She asserts she was not informed that the 36-month firearm enhancement would run consecutive to her base sentence. Larsen also alleges she received ineffective assistance of counsel. Because the court did not abuse its discretion in denying Larsen's motion to withdraw her guilty plea, and she was not prejudiced by any deficient performance of her counsel, we affirm.

FACTS

I.    BACKGROUND[1]

On May 9, 2021, Larsen and her husband, Guillermo Othon, entered the home of Kendra Smith, Matthew Garcia, and Garcia's two children.  Larsen and Othon had bandanas over their faces and were carrying guns.  Smith stated Larsen and Othon were her drug dealers but that they came there regarding a dispute over a vehicle Smith and Garcia had purchased from them.  Smith stated that they did not want to pay the rest of the money they owed Larsen and Othon for the car because it "turned out to be crap."  Clerk's Papers (CP) at 8.  Othon ended up shooting the family's dog, Ruger, then he and Larsen fled the scene.

Othon and Larsen were found in Grants Pass, Oregon, arrested on a warrant and extradited back to Thurston County to face charges for attempted delivery of a controlled substance.[2]

In Grays Harbor County, Larsen was charged with assault in the first degree, burglary in the first degree, two counts of assault in the second degree, unlawful possession of a firearm in the second degree, felony harassment, and animal cruelty in the first degree.  All of the charges carried an associated firearm enhancement, except unlawful possession of a firearm and animal cruelty, for a total of five enhancements.

II.   GUILTY PLEA AND STATEMENT OF DEFENDANT ON PLEA OF GUILTY

After negotiations, the State filed an amended information that dropped the charges for assault in the first degree, felony harassment, and animal cruelty in the first degree.

---

[1] This factual account comes from the prosecuting attorney's declaration in support of the motion for Larsen's arrest warrant.

[2] Information for these charges comes from Larsen's criminal history listed in the plea agreement.

Larsen entered an *Alford* plea[3] to the charges in the amended information: assault in the second degree with a firearm enhancement (count 1), assault in the second degree (count 2), and burglary in the second degree (count 3). The plea agreement[4] stated that the prosecutor would be "recommending that [Larsen] be required to register as a firearm offender." CP at 32.

The statement of defendant on plea of guilty contained a section titled "Notification Relating to Specific Crimes" under which every paragraph had been crossed off with an "X." CP at 42. However, next to this section, the word "applies" was handwritten with a star and arrow drawn toward the section. CP at 42. A line was drawn in the margin down six pages of this section of the statement with a star, apparently to incorporate that material. Larsen's initials were handwritten on each page of the starred sections.[5]

Specifically, section "kk" stated:

> The offense(s) I am pleading guilty to include(s) a deadly weapon, firearm, or sexual motivation enhancement. Deadly weapon, firearm, or sexual motivation enhancements are mandatory, they must be served in total confinement, and they must run consecutively to any other sentence and to any other deadly weapon, firearm, or sexual motivation enhancements.

CP at 46-47. The line right next to section "kk" was left blank, however the aforementioned line drawn in the margin encompassing "kk" had Larsen's initials next to it.

The separate plea agreement signed by Larsen contained a sentencing range chart that listed the standard ranges for each charge.

---

[3] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[4] The parties had a written plea agreement, which was attached to the statement of defendant on plea of guilty.

[5] The initials were "CO." Larsen signed the plea agreement as "Cierra Othon." CP at 42-48.

| Count | Offender Score | Seriousness Level | Standard Range | Plus Enhancements | Total Standard Range | Maximum Term |
|-------|---------|-----------|----------|-------------|----------|----------|
| 1 | 9+ | IV | 63-84 months | 36 months | 10 years | 10 years in prison and/or a $20,000 fine |
| 2 | 9+ | IV | 63-84 months | | 10 years | 10 years in prison and/or a $20,000 fine |
| 3 | 9+ | III | 51-68 months | N/A | 51-68 months | 10 years in prison and/or a $20,000 fine |

CP at 34. In one column, the range listed for count 1 was 63-84 months with a maximum term of 10 years. In a separate column next to this range, it listed a 36-month firearm enhancement under the heading "Plus Enhancements." CP at 34. The statement also incorporated by reference the State's recommendation contained in the separate plea agreement. In the plea agreement, the State recommended 10 years on count 1, 84 months on count 2, and 68 months on count 3.

III.    PLEA COLLOQUY

At Larsen's plea colloquy, the following exchange took place:

THE COURT: Did you read these documents I have before me, the statement on plea of guilty and plea agreement?
[LARSEN]: Yes.
THE COURT: And you believe you understand everything contained in these documents?
[LARSEN]: Yes.
THE COURT: Did you discuss with your attorney what the elements of the crimes are, meaning what the State would have to prove beyond a reasonable doubt at trial, in order to convict you?
[LARSEN]: Yes.
THE COURT: In the statement on plea of guilty are listed your important constitutional rights; did you review those with your attorney?
[LARSEN]: Yes.
THE COURT: Did you wish to go over those again in Court today?
[LARSEN]: No.

4

> THE COURT: And do you understand each of those?
> [LARSEN]: Yes.
> THE COURT: And do you understand that by pleading guilty you waive each and every one of those rights?
> [LARSEN]: Yes.

Rep. of Proc. (RP) (May 18, 2023) at 8-9. The trial court also discussed the sentencing ranges Larsen would face on each count stating:

> [THE COURT]: . . . And so on count one, your standard range of sentence is 63 to 84 months, but then that also has a 36-month enhancement for the firearm. Do you understand that?
> [LARSEN]: Yes.
> THE COURT: And then count two would be a standard range of 63 to 84 months, and count three would be 51 to 68 months; is that your understanding of your—of your ranges?
> [LARSEN]: Yes.
> THE COURT: And the State it looks like the State is going to recommend the top of the standard range on count one, ten years[6], and then 84 months on count two, and 68 months on count three, and that time will run concurrently, meaning at the same time; is that your understanding of your agreement with the State?
> [DEFENSE COUNSEL]: Yes.

RP (May 18, 2023) at 10. The high end of the standard range on count 1 was 84 months but had an additional 36 months for the firearm enhancement, which ran consecutively for a total of 120 months. The State's recommendation on count 2, which did not have a firearm enhancement, was 84 months.

Larsen orally pleaded guilty to assault in the second degree armed with a firearm, assault in the second degree, and burglary in the second degree. Larsen stated she was making her plea freely and voluntarily and that she signed both the plea agreement and the statement of defendant on plea of guilty. The court found that Larsen knowingly, intelligently, and voluntarily made the plea and that she understood the charges and consequences of the plea.

---

[6] Ten years equals 120 months.

5

IV.     FIRST SENTENCING HEARING AND SUBSTITUTION OF COUNSEL

On June 20, defense counsel submitted a sentencing recommendation for Larsen's sentencing hearing that stated:

> [Larsen] asks that the court hear from her an argument for a sentence for this matter *less than what the State has called for in its offer* . . . it is observed, as well, that pursuant to the plea agreement for amended charges in which the State exercised discretion to dismiss a more serious charge ripe for trial, plus at least one firearm enhancement, that the State has provided substantial consideration for the court to impose the sentence as set forth in its recommendation.

CP at 66 (emphasis added). The sentencing report also requested credit for time served between June 3, 2021 and Sept. 21, 2022.

On June 22, 2023, at Larsen's first sentencing hearing, Larsen requested a continuance and told the trial court that she was never given a copy of the plea agreement and that she felt that information in it was misrepresented to her. The court continued sentencing to June 30 to allow Larsen time to go over the plea agreement.

On June 26, the court received a letter from Larsen documenting her struggles communicating with her attorney, Jonathan Feste. Larsen said that Feste told her "per court rule, neither the prosecutor nor the defense could make a recommendation towards concurrent or consecutive sentences and it would just follow the standard of the law." CP at 75.

On July 3, Feste withdrew as Larsen's counsel and was replaced by new counsel.

V.      HEARING ON MOTION TO WITHDRAW PLEA

On August 25, the court heard Larsen's motion to withdraw her guilty plea. Larsen testified that,

> I had explained to [Feste] I was adamant that I would not be willing to take a deal unless there was an agreed recommendation for a concurrent sentence. He had spoke[n] with me, my sister and my mother specifically that there was a court rule that made it that neither party was able to make a recommendation for a concurrent—to a consecutive sentence. I wasn't aware of anything about—that

was different until I got my sentencing report about 12 hours before sentencing. So I was unaware that that was even going to be a recommendation that was going to be a consecutive sentence. It was also explained to me that it would be more of an open recommendation where we were asking for the low end and the prosecutor was asking for the high end of the range, that is what was explained to me and my family the entire time that we were expecting to go to sentencing.

RP (Aug. 25, 2023) at 28.

Feste testified that he met with Larsen 10 or 11 times to review discovery, sent her letters, and had phone calls with her. When asked if there was any discussion regarding concurrent sentencing with the Thurston County case, Feste replied:

The information I can relay, not only specific to this case, but in general, is, I cannot bind another county's prosecuting authority to make something concurrent with Grays Harbor, nor can I bind the judge of this jurisdiction of such a thing. So I did not make any promises that would be concurrent with Thurston County on any specific terms, or in general.

RP (Aug. 25, 2023) at 41.

The court stated:

[H]aving heard the testimony today I don't—I still am not sure what Ms. Larsen is alleging that she was misadvised about. You know, she said she expected a concurrent sentence, but there is nothing in the record that shows that that was discussed or promised. And that she said that she could ask for the low end and the prosecutor recommend the high end, and that seems to be exactly the position of the parties. And in Mr. Feste's sentencing statement, he says that, you know, he urges the Court to consider Ms. Larsen's request for something less than what the State is recommending.

RP (Aug. 25, 2023) at 48.

The court found Feste's testimony credible stating:

Mr. Feste is an experienced attorney. Twenty-three years of experience. He has a record of going to trial. So there is nothing here that makes the Court believe that he would, you know, avoid going to trial or have some fear of going to trial if that's what his client wanted. I find his testimony credible. And based on his testimony, he met with Ms. Larsen, what I would consider to be an extraordinary amount of times for someone in custody. He also sent letters. There were phone calls and other communications. I do not believe that he told her the deal was predicated on there being no investigation or no interviews. And there is case law

that the State can predicate a plea offer on such a request. There is no right to a plea bargain or a plea agreement. But there is nothing in the plea agreement that indicates that, and I don't find it credible.

RP (Aug. 25, 2023) at 49.

The court also noted that Larsen got an "extremely favorable deal" because Larsen had a seven-count information, and "if she were convicted only of the assault in the first degree, disregarding all the other counts . . . her standard range would be over 20 years. . . . She is looking at a recommendation of less than half of that." RP (Aug. 25, 2023) at 50-51. The court denied Larsen's motion to withdraw her guilty plea.

VI.    SECOND SENTENCING HEARING

At sentencing, the trial court addressed Larsen's request for an evidentiary hearing. Larsen's counsel stated that Larsen believed "other witness statements . . . would shed more light on the whole situation." RP (Sept. 5, 2023) at 4. The court responded that Larsen had a right to be heard but that "[t]here [is] no reason, when somebody has pled guilty, to go and then adjudicate the facts. That's what a trial is for, and she waived her opportunity for that." RP (Sept. 5, 2023) at 5.

Larsen's counsel requested that the court follow the plea agreement. Larsen asked the court to run her sentence concurrently with her Thurston County sentence. The court followed the State's sentencing recommendation stating:

> In the end, I'm going to follow the [S]tate's recommendation: 84 months on count 1, plus a 36-month firearm enhancement because that is the statutory maximum. I'm not going to impose anything additional. Count 2, 84 months, plus 18 months community custody. I can't imagine why you wouldn't need community custody. 68 months on count 3. All of those counts will run concurrently, meaning at the same time.
>     Pursuant to RCW 9.94A.589(3), I am ordering that both your confinement and community custody run consecutive to Thurston County and all other commitments. I'm not giving you credit for time that you were held on other matters.

8

RP (Sept. 5. 2023) at 8-9.  The State also requested that Larsen be required to register as a firearm offender, but the court denied this request.

Larsen appeals the trial court's denial of her motion to withdraw her guilty plea.[7]

ANALYSIS

I.     INVOLUNTARINESS OF GUILTY PLEA

Larsen argues her plea was involuntary because she was not adequately advised of her right to request a concurrent sentence and advocate for a low-end standard range sentence, and she was not informed that the 36-month firearm enhancement would run consecutive to her base sentence. We disagree.

A.     Legal Principles

We review a trial court's denial of a motion to withdraw a guilty plea for an abuse of discretion.  *State v. Marshall*, 144 Wn.2d 266, 280, 27 P.3d 192 (2001), *abrogated on other grounds by State v. Sisouvanh*, 175 Wn.2d 607, 290 P.3d 942 (2012).  An abuse of discretion occurs when a court's decision is "'manifestly unreasonable or based upon untenable grounds or reasons.'"  *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002) (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

For a guilty plea to be valid, it must be made intelligently, voluntarily, and "with knowledge that certain rights will be waived."  *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996).  "Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances."  *Id.*  When a defendant signs a plea agreement, there is "'strong evidence' that the plea is voluntary."  *State v. Pugh*, 153 Wn. App. 569, 577, 222 P.3d 821 (2009) (quoting

---

[7] Additional relevant facts are included in the analysis below.

*Branch*, 129 Wn.2d at 642). And "[w]hen a defendant completes a plea statement and admits to reading, understanding, and signing it, this creates a strong presumption that the plea is voluntary." *State v. Smith*, 134 Wn.2d 849, 852, 953 P.2d 810 (1998).

When a defendant seeks to withdraw their guilty plea before judgment and sentence are entered, CrR 4.2(f) governs. *Pugh*, 153 Wn. App. at 576-77. CrR 4.2(f) requires a trial court to allow a defendant to withdraw a guilty plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice." There are "four indicia of manifest injustice that would allow a defendant to withdraw his guilty plea: (1) the defendant received ineffective assistance of counsel, (2) the defendant did not ratify his plea, (3) the plea was involuntary, and (4) the prosecution did not honor the plea agreement." *Pugh*, 153 Wn. App. at 577. "We defer to the trier of fact on issues of witnesses' credibility and the persuasiveness of the evidence." *State v. Perez*, 139 Wn. App. 522, 532, 161 P.3d 461 (2007). Also, unchallenged factual findings are verities on appeal. *Stone v. Dep't of Lab. & Indus.*, 172 Wn. App. 256, 260, 289 P.3d 720 (2012).

B.  Analysis

Again, Larsen argues her plea was involuntary because she was misinformed by her counsel that she could not ask for a concurrent sentence and that this was a direct consequence of her plea.

The trial court clearly found Feste credible. It also did not find Larsen credible that Feste misinformed her regarding the ability to request a concurrent sentence. The trial court commented that "there [is] nothing in the record that show[ed] that [a concurrent sentence] was discussed or promised" in contrast with Larsen's testimony. RP (Aug. 25, 2023) at 48. Because we defer to the trial court's credibility determinations and the court did not believe Larsen's testimony, we conclude that Larsen was not misinformed as she alleges.

Second, Larsen argues her plea was involuntary because her counsel told her he was going to recommend a low-end sentence but did not do so. However, the court interpreted defense counsel's recommendation as a request for a low-end sentence stating Larsen expected "that she could ask for the low end and the prosecutor recommend the high end, and that seems to be exactly the position of the parties." RP (Aug. 25, 2023) at 48. The defense's sentencing recommendation stated, "[Larsen] asks that the court hear from her an argument for a sentence for this matter *less than what the State has called for in its offer*" as well as credit for time served between June 3, 2021 and Sept. 21, 2022. CP at 66 (emphasis added). Larsen's contention that defense counsel did not request a low-end sentence is incorrect. Therefore, we conclude Larsen was not misinformed regarding her right to request a low-end sentence, and counsel requested such.

Third, Larsen argues her plea agreement was involuntary because it did not inform her that the 36-month firearm enhancement ran consecutively to her base sentence.

Larsen's statement on plea of guilty had the sections under "Notifications Relating to Specific Crimes" marked out with an 'X', and the word "[a]pplies" handwritten next to it with stars and an arrow pointing towards the section. Larsen argues that the box next to section "kk" (which noted the 36-month firearm enhancement ran consecutively) was not initialed as applicable. However, while the line right next to section "kk" was not initialed, there was a line drawn down the side of six pages of the plea agreement, including the page containing section "kk," with stars and Larsen's initials next to the sections, indicating Larsen acknowledged those sections were applicable.

The statement on plea of guilty signed by Larsen also contained a sentencing range chart that listed the standard ranges for each charge including 63-84 months for count 1 with a maximum term of 10 years. As illustrated by the chart included above, clearly, the 36-month firearm

11

enhancement is listed in a separate column and only by running it consecutively to all other terms of confinement would it reach 10 years/120 months.

Further, at her plea colloquy, the court stated:

> [THE COURT]: . . . And so on count one, your standard range of sentence is 63 to 84 months, but then that also has a 36-month enhancement for the firearm. Do you understand that?
> [LARSEN]: Yes.

RP (May 18, 2023) at 10. Larsen stated in her colloquy that she had read the plea agreement and understood everything in it. Based on Larsen's statements at the plea colloquy as well as the fact that she initialed the page of her plea agreement containing section "kk," we conclude Larsen was adequately informed of the 36-month firearm enhancement.

Therefore, Larsen has failed to overcome the strong presumption that her plea agreement was voluntary.

II.      INEFFECTIVE ASSISTANCE OF COUNSEL

Larsen argues she received ineffective assistance of counsel because her attorney misinformed her regarding her ability to request a concurrent sentence and did not request a low-end sentence. We disagree.

A.      Legal Principles

To prove ineffective assistance of counsel, a defendant must show (1) counsel's representation was so deficient it fell "below an objective standard of reasonableness" and (2) that deficiency prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting and applying test from *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Failure to satisfy either requirement defeats the claim. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024).

First, "[t]he defendant must overcome 'a strong presumption that counsel's performance was reasonable.'" *Id.* at 130 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). A "defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

Second, to show prejudice in the context of a guilty plea, the petitioner must show that there is a reasonable probability that the petitioner would not have pled guilty and would have instead insisted on proceeding to trial. *State v. Sandoval*, 171 Wn.2d 163, 174-75, 249 P.3d 1015 (2011); *State v. Buckman*, 190 Wn.2d 51, 65, 409 P.3d 193 (2018). "A 'reasonable probability' exists if the defendant 'convince[s] the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Sandoval*, 171 Wn.2d at 175 (alteration in original) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 374, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)).

B.     Analysis

Even if Larsen could show that counsel's performance was deficient, she cannot show prejudice.

Despite Larsen's claim that she would have proceeded to trial unless the plea agreement contained a recommendation for a concurrent sentence and low-end range, nothing in the record suggests it would have been rational under the circumstances to reject the State's plea deal.  As the trial court noted, if she went to trial and was "convicted only of the assault in the first degree, disregarding all the other counts . . . her standard range would be over 20 years. . . . She [received] a recommendation of less than half of that."  RP (Aug. 25, 2023) at 50-51.  Rejecting the plea deal because she was allegedly misinformed regarding the ability to request a concurrent sentence would not have been rational, because even without a concurrent sentence the amount of prison

13

time Larsen faced was significantly lower under the terms of the plea agreement than under the seven-count information initially charged. Therefore, Larsen has failed to show prejudice and we conclude she did not receive ineffective assistance of counsel.

III.    SAG

In a SAG, Larsen claims the trial court erred by applying an incorrect legal standard in presuming her sentences were consecutive, by denying an evidentiary hearing, and by failing to recognize it had the discretion to impose community custody concurrent with her Thurston County community custody. She also appears to claim that the prosecutor violated the plea agreement by recommending firearm offender registration, which was not included in the plea agreement. We disagree.

A.      Legal Principles

We "'will reverse a sentencing court's decision only if [we] find[] a clear abuse of discretion or misapplication of the law.'" *State v. Blair*, 191 Wn.2d 155, 159, 421 P.3d 937 (2018) (quoting *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997)). We review "a trial court's denial of a request for an evidentiary hearing" for an abuse of discretion. *Northwick v. Long*, 192 Wn. App. 256, 260, 364 P.3d 1067 (2015). An abuse of discretion occurs when a court's decision is "'manifestly unreasonable or based upon untenable grounds or reasons.'" *Darden*, 145 Wn.2d at 619 (quoting *Powell*, 126 Wn.2d at 258). We review de novo whether the State breached an unambiguous plea agreement. *State v. Ramos*, 187 Wn.2d 420, 433, 387 P.3d 650 (2017).

RCW 9.94A.589(3) provides that

whenever a person is sentenced for a felony that was committed while the person was not under sentence for conviction of a felony, the sentence shall run concurrently with any felony sentence which has been imposed by any court in this or another state or by a federal court subsequent to the commission of the crime being sentenced unless the court pronouncing the current sentence expressly orders that the confinement terms be served consecutively to each other. Even if the court

14

orders the confinement terms to run consecutively to each other, the terms of community custody shall run concurrently to each other, unless the court expressly orders the community custody terms to run consecutively to each other.

Under this statute, "the trial court is granted total discretion to choose whether to impose a consecutive sentence. It requires only that the judge 'expressly orders that they be served consecutively.'" *State v. Linderman*, 54 Wn. App. 137, 139, 772 P.2d 1025 (1989) (quoting RCW 9.94A.400(3)[8]).

B.      Analysis

First Larsen claims the trial court incorrectly presumed her sentences ran consecutively. Over two months prior to sentencing, the court stated that "when [a defendant is] sentenced on separate days, it's presumed consecutive." RP (June 30, 2023) at 17. However, at sentencing, the court correctly referenced RCW 9.94A.589(3), which presumes a concurrent sentence but gives the court absolute discretion to impose a consecutive sentence. Because the court specifically referenced RCW 9.94A.589(3), we conclude the court did not presume Larsen's sentences ran consecutively, and instead exercised discretion in deciding to impose consecutive sentences.

Second, Larsen similarly claims that the court failed to recognize it had discretion to run community custody concurrently with her Thurston County community custody. RCW.9.94A.589(3), however, presumes community custody runs concurrently but gives the court discretion to impose community custody consecutively. Therefore, the court was exercising its discretion when it imposed community custody consecutively and did not err.

Third, Larsen claims the trial court erred in denying her request for an evidentiary hearing. However, the court allowed Larsen and Feste to testify at the hearing on August 25, 2023. The court's decision not to allow another evidentiary hearing before sentencing was not erroneous,

---

[8] RCW 9.94A.400 was recodified as RCW 9.94A.589. *See* LAWS OF 2001, Ch. 10, § 6.

15

especially since the court had already ruled on Larsen's motion to withdraw her guilty plea. Therefore, the court did not abuse its discretion in denying Larsen's request for an evidentiary hearing.

Fourth, Larsen appears to claim the State violated the plea agreement when it recommended that Larsen register as a firearm offender at sentencing because this was not included in the plea agreement. However, Larsen's contention that the plea agreement did not put her on notice that the State would be recommending firearm offender registration is incorrect. The plea agreement did explain that the prosecutor would be "recommending that [Larsen] be required to register as a firearm offender." CP at 32. Therefore, the State did not violate the plea agreement. The court denied the State's request anyway. We find no error.

CONCLUSION

Because the trial court did not abuse its discretion in denying Larsen's motion to withdraw her plea agreement, and Larsen failed to prove ineffective assistance of counsel, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Lee, J.

_____
Price, J.

16