236 P.3d 986 (2010)
David STREETER-DYBDAHL, Respondent,
v.
NGUYET HUYNH and "John Doe," Huynh, wife and husband and their community, Appellants.
No. 63708-8-I.
Court of Appeals of Washington, Division 1.
August 9, 2010.
*987 Marilee C. Erickson, Michael Neil Budelsky, Reed McClure, Two Union Square, Janet L. Thomas, Attorney at Law, Seattle, WA, for Appellants.
Patrick Joseph Manley, The Manley Law Firm PS Inc., Seattle, WA, for Respondent.
GROSSE, J.
¶ 1 Proper service of process has not been accomplished when the defendant is not personally served and there is insufficient evidence to establish that the address served was the center of the defendant's domestic activity. Here, the summons and complaint was left with someone who was not the defendant at a house in which the defendant did not reside and only visited occasionally to pick up mail that was sent to her at that address. Thus, the defendant was not properly served and the trial court erred by denying the defendant's motion to dismiss for *988 insufficient process. Accordingly, we reverse.

FACTS
¶ 2 On September 20, 2005, David Streeter-Dybdahl and Nguyet Huynh were involved in a car accident. On September 18, 2008, Streeter-Dybdahl filed a negligence lawsuit against Huynh. On November 20, 2008, Huynh's attorney contacted Streeter-Dybdahl's attorney and asked for proof and confirmation of service, but received no response.
¶ 3 On November 23, 2008, a process server attempted to serve the complaint on Huynh at the address listed for Huynh in the police report of the accident. That address was listed as 722 Martin Luther King Jr. Way South in Seattle, Washington. The process server served the lawsuit documents on a male adult who was at the Seattle residence at the time. In his declaration of service, the process server stated:
That on the 23rd day of November, 2008 @ 02:19 PM, at the address of 722 MARTIN LUTHER KING JR WAY S, SEATTLE, within KING County, WA, the undersigned duly served the following document(s): SUMMONS; COMPLAINT FOR DAMAGES; ORDER SETTING CIVIL CASE SCHEDULE in the above entitled action upon NGUYET HUYNH, by then and there, at the residence and usual place of abode of said person(s), personally delivering TWO true and correct copy(ies) of the above documents into the hands of and leaving same with NGUYET HUYNH, A NAMED DEFENDANT, being a person of suitable age and discretion, then resident therein.
Desc: Sex: MALEAge: 30'sSkin: ASIANHair: BROWNHeight: 5'8" Weight: 140.
¶ 4 On December 23, 2008, Huynh answered the complaint and pleaded insufficient service and lack of jurisdiction. She later filed a motion to dismiss on that basis. Huynh asserted that she was never personally served with the complaint and that she did not live at the Seattle address where the complaint was served.
¶ 5 In support of her motion to dismiss, Huynh filed a declaration stating that she is a 5'1" tall female, weighing 110 pounds, that her husband is 49 years old and is 5'3" tall, and that she lived at the Seattle address in 2002, but later moved to Lynnwood where she currently resides. She further stated that she has lived at her current Lynnwood address since 2008 and before that lived at another Lynnwood address for five years. She also submitted property records indicating that she bought her current home in Lynnwood on April 1, 2008.
¶ 6 In response, Streeter-Dybdahl submitted documentation showing that Department of Licensing (DOL) records listed a Lynnwood address for Huynh effective April 2005, but in January 2006, listed the Seattle address for Huynh, which is still on file as the most current address. Streeter-Dybdahl also submitted King County records showing that Huynh had a previous ownership interest in the Seattle residence, but that she had quitclaimed that interest in 2006. He further noted that the police report of the accident listed Huynh's address as the Seattle address.
¶ 7 The trial court also considered the deposition of Huynh's brother, Tu Huynh,[1] who was living at the Seattle address at the time service was attempted. According to Tu, he lived with his father at the Seattle address in November 2008, but denied ever receiving or seeing the summons and complaint for Huynh. He also testified that Huynh moved out of that residence sometime around 2003 to 2004 and came by once or twice a month to collect mail that came to her at the Seattle address.
¶ 8 The trial court denied the motion to dismiss without findings. We granted discretionary review.[2]

ANALYSIS
¶ 9 "Proper service of the summons and complaint is a prerequisite to the court *989 obtaining jurisdiction over a party, and a judgment entered without such jurisdiction is void."[3] Whether service of process was proper is a question of law that this court reviews de novo.[4] The plaintiff has the initial burden of proof to establish a prima facie case of sufficient service.[5] An affidavit of service is presumptively correct, and the party challenging the service of process bears the burden of showing by clear and convincing evidence that the service was improper.[6]
¶ 10 RCW 4.28.080 sets forth the requirements for service and provides, in pertinent part:
Service made in the modes provided in this section shall be taken and held to be personal service. The summons shall be served by delivering a copy thereof, as follows:
....
(15) In all other cases, to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein.
¶ 11 Here, there is no dispute that Huynh was not personally served with the summons and complaint. Thus, the question becomes whether the service amounts to proper substitute service, i.e., that it was served at Huynh's place of usual abode with a person of suitable age who resides at that address.[7] The term "`[u]sual place of abode' must be taken to mean such center of one's domestic activity that service left with a family member is reasonably calculated to come to one's attention within the statutory period for [the] defendant to appear."[8]
¶ 12 In Gross v. Evert-Rosenberg, service of process was held to be insufficient when the summons and complaint were left with the defendant's daughter's husband at a house owned by the defendant but leased to his daughter and her husband.[9] The court concluded that while the tenants of the defendant's rental house were related to the defendant, "they had a completely different center of domestic activity," and therefore service at the rental house was not valid.[10] Similarly, in Vukich v. Anderson, the court held that service at the defendant's rental house was not proper substitute service.[11]
¶ 13 Likewise here, service at Huynh's former residence was not proper substitute service. The record does not establish that the Seattle address was the center of her domestic activity and therefore her place of usual abode at the time process was served. While the Seattle address was listed with DOL as her current residence, the use of a particular address for a limited purpose is not a critical factor in determining a center of domestic activity.[12] Streeter-Dybdahl points to no other facts suggesting that that house was the center of her domestic activity. Rather, according to the deposition of Huynh's brother who resided there at the time of service, she had moved out of the house sometime in 2003 to 2004 and only came by once or twice a month to collect mail that came to her there.[13] Additionally, she *990 no longer had an ownership interest in that house at that time, demonstrating even less of a connection to the residence than in Gross and Vukich, where substitute service was held to be improper even though attempted at a house owned by the defendant.
¶ 14 Streeter-Dybdahl relies on Sheldon v. Fettig, where the court recognized that "in appropriate circumstances a defendant may maintain more than one house of usual abode if each is a center of domestic activity where it would be most likely that defendant would promptly receive notice if the summons were left there."[14] There, the defendant, a flight attendant, leased an apartment in Chicago but had lived at her parents' home in Seattle previously and often spent time there when she flew back in from Chicago.[15] A summons and complaint against her was served on her brother at her parents' Seattle home.[16] The court concluded that service was proper because her family home in Seattle constituted a center of domestic activity, explaining that she was a "quintessential example of a highly mobile person splitting her time between two places," and that by doing so, she maintained two places of usual abode, one at her family home in Seattle and one at her Chicago apartment.[17]
¶ 15 But here, as discussed above, there was no evidence to suggest that Huynh actually resided at the Seattle house, much less split her time between that house and her Lynnwood home.[18] While Streeter-Dybdahl places much weight on the fact that mail was kept in a special box for Huynh at the Seattle house, there is no evidence that she was immediately notified or aware when mail came for her at that address; it was simply kept there for her in the event she came by. Such facts do not suggest that the Seattle house was the center of her domestic activity and that service left with a family member there is reasonably calculated to come to her attention within the statutory period for her to appear.
¶ 16 Streeter-Dybdahl further contends that Huynh waived her claim of insufficient process because there is a genuine issue of material fact about her knowing concealment of the apparent mistaken service upon her brother at the Seattle address. Streeter-Dybdahl relies on Lybbert v. Grant County, which held that the defendant waived the defense by engaging in dilatory conduct or conduct inconsistent with asserting the defense.[19] In Lybbert, the defendant did not plead insufficient service, engaged in several months of discovery, discussed mediation, failed to respond to interrogatories inquiring about a possible insufficient service defense, and then asserted the defense after the statute of limitations had run.[20]
¶ 17 Streeter-Dybdahl contends that likewise here, Huynh's conduct should result in a waiver. He notes that she had notice of the lawsuit even before service occurred, pointing to the fact that her attorney was preparing an answer even before service was attempted. But as Huynh contends, this does not establish dilatory conduct. In fact, the context of her attorney preparing an answer was in a request for proof and confirmation of service, to which Streeter-Dybdahl's attorney did not respond. And as Huynh points out, a defendant has no duty to assist the process server.[21]
¶ 18 Rather, Streeter-Dybdahl must establish *991 willful evasion of process,[22] and the record here does not establish that Huynh took any action that prevented him from determining her current address. While he notes that she gave the Seattle address for the incident report of the accident, this occurred three years before the lawsuit was filed and before she moved to her current address. Nor does the fact that DOL still listed her Seattle address at the time service was attempted establish willful evasion. DOL records indicated that this address became effective in January 2006, before she moved to her current residence and before the lawsuit was even filed.
¶ 19 Additionally, unlike in the cases upon which Streeter-Dybdahl relies, the record here does not establish that Huynh was "[lying] in wait" and deprived the plaintiff of the opportunity to cure the service defect.[23] To the contrary, her attorney requested proof of service before the suit perfection deadline, but received no response. Service was then attempted less than a month before the service deadline and the declaration of service was not filed until the day before that deadline. The declaration of service plainly indicated defective service by stating that Huynh was a male served at the Seattle residence, but Streeter-Dybdahl made no attempt to correct it before the deadline. A week later, Huynh filed her answer asserting the defense.
¶ 20 Thus, the record does not establish that the error in service was due to any intentional evasion by Huynh. Rather, the record indicates that it was a result of the process server's mistaken belief that he personally served Huynh and Streeter-Dybdahl's failure to correct that error before the service deadline. Accordingly, Streeter-Dybdahl fails to establish a waiver of the defense.
¶ 21 We reverse.
WE CONCUR: LEACH, A.C.J., and DWYER, C.J.
NOTES
[1] To avoid confusion, Tu Huynh will be referred to by his first name.
[2] Commissioner's Ruling Granting Discretionary Review, entered August 14, 2009.
[3] Woodruff v. Spence, 76 Wash.App. 207, 209, 883 P.2d 936 (1994).
[4] Pascua v. Heil, 126 Wash.App. 520, 527, 108 P.3d 1253 (2005).
[5] Gross v. Sunding, 139 Wash.App. 54, 60, 161 P.3d 380 (2007).
[6] Woodruff, 76 Wash.App. at 210, 883 P.2d 936.
[7] Salts v. Estes, 133 Wash.2d 160, 161, 943 P.2d 275 (1997).
[8] Sheldon v. Fettig, 129 Wash.2d 601, 610, 919 P.2d 1209 (1996) (quoting Sheldon v. Fettig, 77 Wash.App. 775, 781, 893 P.2d 1136 (1995)).
[9] 85 Wash.App. 539, 933 P.2d 439 (1997).
[10] Gross, 85 Wash.App. at 543, 933 P.2d 439.
[11] 97 Wash.App. 684, 985 P.2d 952 (1999) (concluding that "Mr. Anderson, like the defendant in Gross, retained ownership of [the house where process served] but was actually residing at another abode").
[12] See Vukich, 97 Wash.App. at 690-91, 985 P.2d 952 (keeping Washington driver's license with old address insufficient); Gross, 85 Wash.App. at 541, 933 P.2d 439 (continued use of address for voter registration and property tax billing address insufficient); Blankenship v. Kaldor, 114 Wash.App. 312, 317, 57 P.3d 295 (2002) (use of address on checking account insufficient).
[13] Vukich, 97 Wash.App. at 690-91, 985 P.2d 952 (continuing delivery of mail to defendant at address where process served not determinative).
[14] 129 Wash.2d 601, 612, 919 P.2d 1209 (1996).
[15] Sheldon, 129 Wash.2d at 605, 919 P.2d 1209.
[16] Sheldon, 129 Wash.2d at 604, 919 P.2d 1209.
[17] Sheldon, 129 Wash.2d at 612, 919 P.2d 1209.
[18] Similarly, in Gross, 85 Wash.App. at 543, 933 P.2d 439, the court distinguished Sheldon, concluding:

Unlike the facts in Sheldon, where the adult-child defendant was deemed to have more than one usual abode, one in Illinois and one at her parents' home in Washington [S]tate, here Evert-Rosenberg, the parent, moved to a new home, retaining ownership of the Federal Way house but actually residing in another abode.
[19] 141 Wash.2d 29, 1 P.3d 1124 (2000). Streeter-Dybdahl also relies on King v. Snohomish County, 146 Wash.2d 420, 47 P.3d 563 (2002).
[20] Lybbert, 141 Wash.2d at 32-34, 1 P.3d 1124.
[21] Thayer v. Edmonds, 8 Wash.App. 36, 42, 503 P.2d 1110 (1973).
[22] Rodriguez v. James-Jackson, 127 Wash.App. 139, 147, 111 P.3d 271 (2005).
[23] See Lybbert, 141 Wash.2d at 40, 1 P.3d 1124.