[No. 64046-1-I.   Division One.   April 11, 2011.]

MATTHEW W. GOETTEMOELLER ET AL., *Respondents*, v. GRAHAM M. TWIST ET AL., *Petitioners*.

*Rory W. Leid* and *Midori R. Sagara* (of *Cole Lether Wathen & Leid PC*); and *Dwayne L. Christopher* (of *Betsy Rodriguez PS*), for petitioners.

*William M. Belanger* and *Gregory L. Samuels* (of *Cross Border Law Corporation*), for respondents.

¶1 GROSSE, J. — Service of a summons at a private mailbox is not sufficient to effectuate substitute service under RCW 4.28.080(16) when that mailbox is not the defendant's usual mailing address. Here, the defendant had moved to England more than two years earlier and there was no evidence that the private mailbox address at which service was attempted was the defendant's "usual mailing address," and thus there was no valid substitute service. Accordingly, we reverse the trial court and remand for dismissal for improper service.

## FACTS

¶2 Graham and Susan Twist (together Twist) moved to Washington State from England and in 2001 obtained a private mailbox at The Mailbox in Lynden, Washington. In June 2005, Twist was involved in an automobile accident with Matthew and Lindsay Goettemoeller (together Goettemoeller). In October 2005, Twist began using a home mail-

ing address in Bellingham, Washington. In January 2006, Twist returned to England where he remains today.

¶3 On September 29, 2006, Goettemoeller filed a complaint for damages against Twist. In March 2008, pursuant to CR 41(b)(2), the clerk of the court sent a notice of dismissal for want of prosecution because there had been no activity in the case for over a year. On April 7, 2008, Goettemoeller filed an amended complaint. A few days afterward, a process server located Twist by e-mail. Twist replied to the e-mail, asserting that he had moved from Washington more than two years earlier and that he was not a United States citizen, but did not provide the process server with address information. On June 6 2008, Goettemoeller attempted substitute service by mail using the Lynden private mailbox address.

¶4 Goettemoeller moved for partial summary judgment on the issue of service. On cross motions for summary judgment, Twist argued that he had cancelled his private mailbox service in Lynden in October 2005, received no mail at that address, and had made no arrangements to forward mail to him from that address. Instead, at that time, Twist began receiving mail at 1225 East Sunset Drive, Suite 145, PMB 543, in Bellingham. Twist submitted two bank statements from US Bank. The first statement from August 17, 2005 through September 19, 2005 was mailed to the Lynden address. The second statement covering October 12, 2005 through October 26, 2005 was mailed to the Bellingham address. Additionally, Twist provided documentation that he was receiving mail at his mailing address in the United Kingdom, evidenced by his pension checks and various utility statements.

¶5 On August 7, 2009, after requesting additional factual information, the trial court found that Twist had been personally served with the summons and complaint thereby conferring in personam jurisdiction over him. A commis-

sioner of this court granted Twist's motion for discretionary review.[1]

## ANALYSIS

¶6 "Proper service of the summons and complaint is a prerequisite to the court obtaining jurisdiction over a party."[2] Whether service of process was proper is a question of law that this court reviews de novo.[3] The plaintiff has the initial burden of producing an affidavit of service that on its face shows that service was properly carried out.[4] An affidavit of service is presumptively correct, and the party challenging the service of process bears the burden of showing by clear and convincing evidence that the service was improper.[5] A person who challenges the personal jurisdiction based on insufficient service of process has the burden of proof to establish a prima facie case of improper service.[6]

¶7 RCW 4.28.080 sets forth the requirements for service and provides, in pertinent part:

Service made in the modes provided in this section shall be taken and held to be personal service. The summons shall be served by delivering a copy thereof, as follows:

. . . .

(15) In all other cases, to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein.

(16) In lieu of service under subsection (15) of this section, where the person cannot with reasonable diligence be served as

---

[1] In his reply brief, Twist moves to strike portions of Goettemoeller's brief. The motion is denied under RAP 17.4(d) ("A party may include in a brief only a motion which, if granted, would preclude hearing the case on the merits.").

[2] *Woodruff v. Spence*, 76 Wn. App. 207, 209, 883 P.2d 936 (1994).

[3] *Pascua v. Heil*, 126 Wn. App. 520, 527, 108 P.3d 1253 (2005).

[4] *Witt v. Port of Olympia*, 126 Wn. App. 752, 757, 109 P.3d 489 (2005).

[5] *Woodruff*, 76 Wn. App. at 210.

[6] *Woodruff*, 76 Wn. App. at 210.

described, the summons may be served as provided in this subsection, and shall be deemed complete on the tenth day after the required mailing: By leaving a copy at his or her usual mailing address with a person of suitable age and discretion who is a resident, proprietor, or agent thereof, and by thereafter mailing a copy by first class mail, postage prepaid, to the person to be served at his or her usual mailing address. For the purposes of this subsection, "usual mailing address" shall not include a United States postal service post office box or the person's place of employment.

Here, there is no dispute that Twist was not personally served with the summons and complaint. Thus, the question becomes whether the service amounts to valid substitute service, i.e., that it was served at his "usual mailing address."

¶8 In its ruling, the trial court considered two declarations from Chris Cooke, the records custodian for The Mailbox. The first declaration provided a copy of the 2001 contract for the mailbox rental and a copy of an index card that "evidences that regular payments on the mailbox" were made up until December 15, 2009.[7] Cooke's second declaration on June 25, 2009, noted that The Mailbox had moved locations and that he had been in their employ since January 2007. Since his employment, he had not received any mail for Twist. Cooke also noted that the mailboxes are paid on an annual basis and he did not have any documentation or records showing the method of payment or who made payments for the mailboxes. The most that can be shown from this affidavit is that someone retained the ability to use the private mailbox in Lynden for receipt of mail, but there was no evidence establishing this was Twist's "usual mailing address."

¶9 While courts have not addressed this particular issue, an analogy to substitute service for "usual abode" under RCW 4.28.080(15) is helpful. Substitute service may be made at a house of "usual abode," with a person of suitable

---

[7] The first declaration is undated, but exhibits attached to it show a date in May 2009 and the filing day with the court is in June 2009.

age and discretion who resides therein.[8] A person can have more than one house of usual abode.[9] "A place of usual abode, however, must be 'a place where the defendant's domestic activity is centered and where service left with a family member is reasonably calculated to come to the defendant's attention within the statutory period for making an appearance.' "[10]

¶10 In *Wright v. B&L Properties, Inc.*, the only Washington decision applying substitute service by mail to a private mailbox, this court concluded that a private mailbox may serve as a defendant's "usual mailing address" to effectuate statutory substitute service.[11] However, *Wright* is distinguishable. In *Wright*, there was evidence that the defendant still used the services of the private mailbox, his only address in Seattle, and had made arrangements to have his mail forwarded to him. Here, it is undisputed that Twist used his address in England for his mail and there is no evidence that any arrangements were made to have mail forwarded. At most, Twist retained the ability to use the private mailbox in Lynden for the receipt of mail.

¶11 Under RCW 4.28.080(15) a person may have more than one house of usual abode. By analogy, under RCW 4.28.080(16), a person may have more than one "usual mailing address." But just as more is required than the mere existence of an additional abode, so too there must be more than the existence of a mailing address. A "usual mailing address" must mean some level of actual use for the receipt of mail or arrangements contemplating an actual use for receiving and forwarding mail. Unlike the facts in *Wright*, here there is no evidence that Twist used the mailbox for any mail at all or that he arranged to forward

---

[8] RCW 4.28.080(15); *Sheldon v. Fettig*, 129 Wn.2d 601, 607, 919 P.2d 1209 (1996).

[9] *Sheldon*, 129 Wn.2d at 611.

[10] *Blankenship v. Kaldor*, 114 Wn. App. 312, 316, 57 P.3d 295 (2002) (quoting *Gross v. Evert-Rosenberg*, 85 Wn. App. 539, 542, 933 P.2d 439 (1997)).

[11] 113 Wn. App. 450, 461-62, 53 P.3d 1041 (2002).

mail from the private mailbox. The facts here are more closely aligned with those in *Streeter-Dybdahl v. Nguyet Huynh*.[12] In *Streeter-Dybdahl*, this court held that service of a summons and complaint on someone in a residence where the defendant did not reside and only visited occasionally to pick up mail that was transmitted to the defendant at that address was insufficient to effectuate substitute service.[13]

¶12 Goettemoeller argues that he expended due diligence to obtain an address to which he could serve the complaint. But the crux of the issue is the "usual mailing address," not due diligence. Moreover, the process server was aware via e-mail that Twist resided out of the country; it would seem that due diligence would have included service on the secretary of state.[14]

¶13 Goettemoeller's argument that the case at bar is about "shielding oneself from personal service by hiding behind the substitute service statute of RCW 4.28.080(16)" and "purposefully conceal[ing] his identity and whereabouts" is without merit. Such conduct, even if true, did not establish dilatory conduct. A defendant has no duty to assist a process server.[15]

¶14 Accordingly, we reverse the trial court and remand for dismissal since more than three years elapsed since the personal injury occurred.[16]

DWYER, C.J., and SPEARMAN, J., concur.

---

[12] 157 Wn. App. 408, 236 P.3d 986 (2010).

[13] *Streeter-Dybdahl*, 157 Wn. App. 408.

[14] Washington's nonresident motorist statute provides that valid personal service on a defendant may be obtained by serving the summons and complaint upon the secretary of state. RCW 46.64.040; *Martin v. Meier*, 111 Wn.2d 471, 476, 760 P.2d 925 (1988).

[15] *Streeter-Dybdahl*, 157 Wn. App. at 416 (citing *Thayer v. Edmonds*, 8 Wn. App. 36, 42, 503 P.2d 1110 (1972)).

[16] RCW 4.16.080.