# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| UNIFUND CCR PARTNERS, | No. 56312-6-II |
| Respondent, | |
| v. | |
| PATRICIA BAKER, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Patricia Baker appeals the trial court's order denying her motion to vacate a default judgment against her.

Unifund CCR Partners attempted to serve Baker with a summons and complaint in December 2006 for unpaid credit card debt. In an attempt at substitute service, the documents were left with Baker's sister, Brenda, at her sister's home in Spanaway. However, Baker had never resided there, although she had listed the address as her own for other purposes. When the complaint was not formally answered, Unifund filed a motion for a default judgment that was granted in July 2007. Several months after the judgment was entered, in November 2007, Unifund and Baker entered into a payment plan agreement, and Baker made eight payments thereafter. In 2021, Baker moved to vacate the default judgment based on improper service of process, which was denied. Baker appeals the trial court's order denying the motion to vacate the default judgment.

We reverse the default judgment and remand the matter for further proceedings because Baker was never properly served and the order granting the default judgment is therefore void.

FACTS

I.    BACKGROUND

On December 16, 2006, Unifund attempted to serve Baker with a summons and complaint, alleging an unpaid credit card debt.  The process server served the summons and complaint at 5211 227th Street East in Spanaway (hereinafter 5211 address), and left the documents with "Brenda," Baker's sister.  Clerk's Papers (CP) at 8.  No copy of the complaint and summons were served on Baker personally.  The affidavit of service asserts that the process server:

> on the 16th day of December, 2006 at 12:46 PM . . .
>
> PERSONALLY delivered a true and correct copy of the SUMMONS, COMPLAINT, NOTICE TO SERVICE MEMBERS AND THEIR DEPENDANTS(sic) and leaving the same with BRENDA. That at the time and place set forth above, affiant duly-served the above described documents in the above-entitled matter upon PATRICIA BAKER, by then and there, at the residence and usual place of abode of said person(s), personally delivering a true and correct copy thereof to and leaving same with BRENDA being a person of suitable age and discretion then resident therein.

CP at 8 (emphasis omitted).

II.    DEFAULT JUDGMENT

On July 16, 2007, Unifund filed a motion and declaration for default judgment.  The motion stated that Unifund had received a communication on behalf of Baker, that more than 20 days had passed since the date of service, and that Baker had failed to file an answer and was therefore in default.  The trial court granted the order of default on August 1, 2007.

According to a declaration submitted by Unifund's attorney, Erin Patterson, the communication Unifund was referring to in its motion was two phone calls from Baker after service on January 3, 2007, and January 9, 2007.[1] Patterson's declaration also states:

> The records and court file further reflect that supplemental proceedings for a hearing regarding judicial subpoena was noted and sent to the address of service. The hearing was held on November 27, 2007, and [Baker] was present. At the hearing, [Baker] provided [Unifund's attorney] with a completed Debtor Interrogatories Form. Attached to this declaration, as Exhibit A, is a true and correct copy of the Debtor Interrogatories Form received by [Unifund's attorney]. The form completed by [Baker] stated that her address was [the 5211 address].

CP at 104.

However, according to Baker's declaration, she learned about this claim against her when she went to visit a relative in November 2007, who was "accidently given what [she] perceived at the time as [her] subpoena papers at their address on her behalf and without [her] knowledge." CP at 63. This was almost one year after the date of service in December 2006, and four months after the default judgment was entered in August 2007. In the same declaration, Baker states that:

> 11. With that subpoena letter, I also found a Debtor Interrogatories Form, which according to the letter, I was supposed to fill it out and send it in 2 days prior [to] the hearing. As stated, I only became aware of it accidently and barely in time to appear in court, so I filled it out and brought it with me.
>
> 12. Maili Barber was the attending attorney for Suttell and Hammer that day I was in court. The judge asked if I was Patricia Baker, I said yes. I wanted to know what the case was all about, but the Judge told me I needed to go out into hall and talk to the attending attorney (Maili Barber).
>
> 13. That was when I gave her the paper that I filled out with all my information on it.

---

[1] Unifund referred to these communications collectively as a "notice of appearance." CP at 104. We do not opine on whether these communications amount to a "notice of appearance." Whether or not they do is immaterial to our analysis of whether substitute service was effectuated.

14. She told me that I had to sign paperwork agreeing to certain payment terms, which were not acceptable to me, but I was told that I effectively had no choice but to make payments on this debt. Putting aside I had disputed the debt, I told her that I cannot make these large payments especially for an extended amount of time. She said that I still had to agree to pay this amount. I said that I know I will not be able to keep up with this amount. She said, well "they wanted to see if you would pay beforehand."

15. I did not understand at that time that a judgment had been entered against me and/or that I had been supposedly served (which I was not). I was effectively deceived into participating in this whole process.

CP at 63-64.

III.     MOTION TO VACATE THE DEFAULT JUDGMENT

On August 13, 2021, 14 years after the default judgment was granted, Baker filed a motion to (1) set aside the order of default and default judgment as void for improper service[2]; (2) quash the writ of garnishment; and (3) dismiss the case as barred under statute of limitations. The motion to vacate asserted that when the attempted service occurred, Baker resided at 23521 45th Avenue East in Spanaway (hereinafter 23521 address),[3] and that she has never resided at the 5211 address. Baker explained that she had used the 5211 address on her paystubs because of "safety concerns pertaining to [her] ex-husband." CP at 128.

---

[2] Baker's pleading filed in the trial court is in part entitled a motion to "set aside" the order of default and default judgment. CP at 27. This is consistent with CR 55. CR 60 refers to such motions as motions to vacate. To avoid confusion, we will refer to this motion as a motion to vacate, consistent with CR 60.

[3] The record before us references both "23521 45th Avenue East" and "2351 45th Avenue East" as Baker's residence. We use "23521 45tth Avenue East" throughout our opinion.

In the declaration in support of the motion to vacate, Baker asserts that she moved into the 23521 address in 2005, where she was roommates with Craig Sherrell and Nicholas Dietz. When Sherrell and Dietz moved out, Baker says she signed a new lease and continued to reside at the 23521 address until 2014.

The evidence Baker brought to support the motion to vacate was as follows: (1) her own declaration attesting to her residence history during the relevant time period; (2) a corroborating declaration from K. Lee Sherrell, indicating that he lived at the 5211 address during the relevant time period with his wife (and Baker's sister) Brenda, and that Baker did not reside there; (3) a declaration from John Main, Baker's then landlord, who attested that in 2006 he leased the 23521 address to Baker, along with a copy of the rental agreement dated March 11, 2006 and a notice to terminate tenancy from 2014; (4) a declaration corroborating Baker's place of abode from Craig Sherrell, Baker's roommate at the 23521 address from 2005 to 2006; (5) a corroborating declaration from Nicholas Dietz, indicating he was roommates with Baker and Sherrell at the 23521 address from 2005 to 2006; and (6) two drivers licenses, one issued in 2005 indicating Baker's address as "20212 2nd Ave Ct E, Spanaway," and the other issued in 2010 indicating Baker's address as the 23521 address. CP at 131.

In response to the motion to vacate, Unifund provided a declaration from Patterson detailing that Baker had listed the 5211 address as her address in response to *post judgment* debt interrogatories and on eight payments made thereafter. The declaration states that Baker never updated her address. Additionally, Unifund provided a payment plan agreement dated December 4, 2007, copies of the eight payments made via money orders listing the 5211 address, and post judgment debt interrogatories completed by Baker once she found out about the lawsuit, four months after the default judgment was entered.

5

On September 10, 2021, a hearing on Baker's motion to vacate the default judgment was held based on declarations by the parties. On September 17, 2021, the trial court denied Baker's motion to vacate. Baker appeals the order denying her motion to vacate the default judgment.

ANALYSIS

Baker argues that the trial court erred in denying her motion to vacate the default judgment because there was clear and convincing evidence of improper service, therefore the judgment is void. We agree.

I. STANDARD OF REVIEW

Generally, motions for vacation or relief of a judgment under CR 60(b) are within the trial court's discretion and will not be disturbed absent a clear abuse of discretion. *Morgan v. Burks*, 17 Wn. App. 193, 197, 563 P.2d 1260 (1977). But we review a trial court's decision to grant or deny a motion to vacate for lack of jurisdiction de novo. *Ahten v. Barnes*, 158 Wn. App. 343, 350, 242 P.3d 35 (2010).

II. A DEFAULT JUDGMENT MAY BE VACATED FOR DEFECTIVE SERVICE OF PROCESS

A. Default Judgment

Default judgments are largely governed by CR 55, but CR 60 also sets forth when a judgment may be vacated or set aside. *Morin v. Burris*, 160 Wn.2d 745, 754, 161 P.3d 956 (2007). CR 55(c)(1) provides: "[f]or good cause shown and upon terms as the court deems just, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with rule 60(b)."

Under CR 60(b)(5), a court may relieve a party from a judgment if that judgment is void.[4] A void judgment lacks legal affect. *In re Marriage of Leslie*, 112 Wn.2d 612, 618-20, 772 P.2d 1013 (1989). When a judgment is void, the trial court has a nondiscretionary duty to grant relief. *In re Marriage of Markowski*, 50 Wn. App. 633, 635, 749 P.2d 754 (1988). A void judgment exists if an issuing court lacks personal jurisdiction over the party or subject matter jurisdiction over the claim. *Kingery v. Dep't of Lab. & Indus.*, 132 Wn.2d 162, 170, 937 P.2d 565 (1997). In personam jurisdiction is obtained upon initial service of process. *Mid-City Materials, Inc. v. Heater Beaters Custom Fireplaces*, 36 Wn. App. 480, 483, 674 P.2d 1271 (1984). Motions to vacate under CR 60(b)(5) on grounds that the judgment is void may be brought at any time after entry of judgment, irrespective of lapse of time. *Markowski*, 50 Wn. App. at 635; *In re Marriage of Hardt*, 39 Wn. App. 493, 496, 693 P.2d 1386 (1985).

B. Service of Process

RCW 4.28.080(16) defines personal service as serving "the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein." "An affidavit of service is presumed to be valid if it is regular in its form and substance." *State ex rel. Coughlin v. Jenkins*, 102 Wn. App. 60, 65, 7 P.3d 818 (2000). The party challenging service has the burden to establish service was improper by clear and convincing evidence. *Id*. In this case, the parties do not dispute that Baker was not personally served. The question is whether or not the service attempted was proper substitute service.

---

[4] Baker argued before the trial court, that CR60(b)(4) and (11) provided alternative bases for relief from the order and judgment. The trial court did not render decisions for these alternatives. Because we conclude that substitute service was improper under CR60(b)(5), we need not address alternative bases to vacate the subject order and judgment.

Substitute service of process is effective when: (1) a copy of the summons is left at defendant's house of usual abode; (2) with some person of suitable age and discretion, and (3) who is a resident therein. RCW 4.28.080(16). Recently, courts "have applied liberal construction to substitute service of process statutes in order to effectuate the purpose of the statute while adhering to its spirit and intent." *Sheldon v. Fettig*, 129 Wn.2d 601, 607, 919 P.2d 1209 (1996). The substitute service of process statute is designed to allow injured parties a reasonable means to serve defendants. *Id*. at 609. A case-by-case determination is necessitated by the fact-specific requirements of the statute, because the particularities of the situation determine whether service meets the requirements. *Wichert v. Cardwell*, 117 Wn.2d 148, 152, 812 P.2d 858 (1991).

Likewise, the term "usual abode[5]" is to be liberally construed to effectuate service and uphold jurisdiction of the court. *Sheldon*, 129 Wn.2d at 609. Usual place of abode means "'such center of one's domestic activity that service left with a family member is reasonably calculated to come to one's attention within the statutory period for defendant to appear.'" *Id*. at 610 (internal quotation marks omitted) (quoting *Sheldon v. Fettig*, 77 Wn. App. 775, 781, 893 P.2d 1136 (1995)). "[U]nder certain circumstances a defendant can maintain more than one house of usual abode." *Sheldon*, 129 Wn.2d at 611. Thus, the inquiry here is whether the Sherrell family home was a center of domestic activity for Baker where she would most likely receive notice of the pendency of a suit if left with a family member. *See id*. at 610.

---

[5] The terms "usual abode," "usual place of abode," and "house of usual abode," are used interchangeably in the authorities.

Because a case-by-case determination is necessary depending on the facts of the situation, it is helpful to examine the factual background of cases dealing with substitute service of process issues. *See Wichert*, 117 Wn.2d at 152. For example, in *Sheldon*, the Supreme Court held that in some circumstances it is possible to maintain more than one place of usual abode. 129 Wn.2d at 612. In that case, the defendant asserting insufficient service of process was a flight attendant who was "a quintessential example of a highly mobile person splitting her time between two places, Seattle and Chicago." *Id*. The court reasoned that because of the way the defendant split her time between her parent's home in Seattle and her apartment in Chicago, each was a "center of domestic activity where it would be most likely that the defendant would promptly receive notice if the summons was left there." *Id*.

While it is possible for a defendant to have more than one house of usual abode, generally people maintain only one house of usual abode for service of process purposes. *Id*. at 611. Making this determination often turns on where the defendant's "center of domestic activity" is located. *See, e.g.*, *Streeter-Dybdahl v. Nguyet Huynh*, 157 Wn. App. 408, 410, 413-15, 236 P.3d 986 (2010); *Vukich v. Anderson*, 97 Wn. App. 684, 687, 691, 985 P.2d 952 (1999); *Gross v. Evert-Rosenberg*, 85 Wn. App. 539, 543, 933 P.2d 439 (1997); *Lepeska v. Farley*, 67 Wn. App. 548, 551, 833 P.2d 437 (1992). Mere ownership of the location of service is not dispositive if that person has a completely different center of domestic activity. *See Gross*, 85 Wn. App. at 543; *Vukich*, 97 Wn. App. at 689. Additionally, use of a particular address for a limited purpose is not a critical factor in determining a center of domestic activity; there must be other facts suggesting the location served this purpose. *Streeter-Dybdahl*, 157 Wn. App. at 414.

C.      Baker Presented Clear and Convincing Evidence That Substitute Service Was Improper

Baker argues that the trial court erred in denying the motion to vacate because she presented clear and convincing evidence that the address served was not her usual place of abode, and therefore service on a person of suitable age and discretion therein was improper. We agree for several reasons.

First, Baker presented a significant quantum of highly probative evidence when compared with the defendant in *Coughlin*, 102 Wn. App. 60. In that case, the only evidence the defendant contesting service had provided were affidavits of his former wife stating that they were estranged at the time of service upon the wife's address, and of his mother, which stated he resided with her at that time. *Id*. at 65. The court held that the defendant had not met the burden of establishing by clear and convincing evidence that the service address was not his abode based on this evidence. *Id*. Notably, the defendant in *Coughlin* also presented evidence implying that he *did* live at the estranged wife's address. *Id*. *Coughlin* is a far cry from the case before us.

In contrast to the defendant in *Coughlin*, Baker supplied affidavits from her former roommates establishing that she resided with them (not at the attempted service address); an affidavit from the former landlord of her actual abode; a rental agreement for her actual abode covering the time period in question; a notice of termination of tenancy from that abode showing she had resided there for eight years, covering the time for which substitute service was attempted at the service address; two driver's licenses from the period in question with different addresses than the service address; and an affidavit from a person living at the service address who corroborated that Baker did not reside there. Also, Baker's evidence from the period before the attempt at service is unchallenged by conflicting preservice evidence brought by Unifund. All of

10

this evidence supports that Baker had one center of domestic activity, which was not at the attempted service address.

Additionally, in *Coughlin*, the State obtained the service address through reliable searches. *Id*. Here, the record does not reflect that Unifund conducted any search to find Baker's proper address. Therefore, the evidence Baker presented is much more likely to meet the "clear and convincing" standard.

One factor in establishing a center of domestic activity is the degree of connection to the subject address. *Gross* is instructive. In that case, the defendant owned the property at the service address, but had established a usual place of abode elsewhere. 85 Wn. App. at 543. Plaintiffs had served the defendant's son-in-law, who was residing in the service address at the time. *Id*. at 542. The court held that substitute service was not proper because the service address was not the defendant's usual place of abode. *Id*. at 541-42. There is even less of a connection here: Baker had no ownership interest in the property where service of process was attempted. Like the defendant in *Gross*, Baker has provided clear and convincing evidence that she established a different "center of domestic activity." *Id*. at 543. Therefore, the service address should not be considered Baker's usual place of abode for service of process purposes.

Unifund argues that because Baker used the service address on payment instruments and never updated her address, service on that address with a resident of suitable age and discretion was proper. Unifund ignores that Baker used this address *after* the alleged service occurred. But even so, the authorities are clear that use of an address for limited purposes is insufficient to establish the location as her "center of domestic activity." For instance, in *Streeter-Dybdahl*, the address at which the defendant was served was current according to the Department of Licensing, but the defendant lived elsewhere. 157 Wn. App. at 414. The court held that using an address for

11

the limited purpose of auto licensing did not establish that the address was the defendant's center of domestic activity. *Id.* Similarly, Baker used the 5211 address for a limited purpose: on financial instruments used to make payments. Baker's evidence, including evidence of her driver's license, rental agreement, affidavits by her landlord, former roommates, and those living at the 5211 service address, demonstrates that the 5211 address where service was attempted was not her center of domestic activity.

Finally, Unifund cites to *Sheldon*, but this case is distinguishable. In *Sheldon*, the court found the defendant had two usual houses of abode and that service at either one was proper. 129 Wn.2d at 612. The defendant had resided at the service address every time she was present in Seattle, which was for several days every month. *Id.* at 605. The defendant also listed the Seattle service address on her driver's license. *Id.* In contrast, here there is no evidence to support that the service address was a second house of usual abode for Baker; there is only evidence supporting that her usual house of abode was elsewhere. Unifund's argument fails.

Baker has demonstrated by clear and convincing evidence that the 5211 address was not her center of domestic activity. Therefore, we conclude that service at the 5211 address was not proper substitute service.

III.    EQUITABLE ESTOPPEL

Unifund argues that Baker is equitably estopped from asserting insufficient service of process. Specifically, Unifund contends that Baker's actions were inconsistent with her late and eventual assertion that she was not served with process because she contacted her attorney less than 30 days after service was made at the 5211 address, never provided a different address, and used the service address on multiple payments. We disagree.

Under the principle of equitable estoppel, "'a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon.'" *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993) (quoting *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78,81, 530 P.2d 298 (1975)). "'The elements of equitable estoppel are: (1) a party's admission, statement or act inconsistent with its later claim; (2) action by another party in reliance on the first party's act, statement or admission; and (3) injury that would result to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission.'" *City of Seattle v. St. John*, 166 Wn.2d 941, 949, 215 P.3d 194 (2009) (quoting *Kramarevcky*, 122 Wn.2d at 743). Equitable estoppel must be shown by "clear, cogent and convincing evidence." *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 831, 881 P.2d 986 (1994). "'It is essential to an equitable estoppel that the person asserting the estoppel changed his position in reliance upon the representations or conduct of the party sought to be stopped.'" *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 487, 254 P.3d 835 (2011) (quoting *Sorenson v. Pyeatt*, 158 Wn.2d 523, 540, 146 P.3d 1172 (2006)). "[P]arties must demonstrate that equitable estoppel is necessary to prevent a manifest injustice and that the exercise of governmental functions will not be impaired as a result of the estoppel." *St. John*, 166 Wn.2d at 949.

Unifund largely relies on *Lybbert v. Grant County*, 141 Wn.2d 29, 1 P.3d 1124 (2000), in making its equitable estoppel claim. But *Lybbert* is inapposite. First, *Lybbert* involves a defendant's untimely assertion of lack of service of process as an affirmative defense *after* the defendant participated in the litigation, and *after* it laid in wait until the expiration of the statute of limitations to assert the defense. *Id*. at 44. In contrast, the case before us involves vacation of a default order and judgment obtained years prior for lack of service of process. But also, Unifund's

argument relies entirely on post-service conduct by Baker, while the equitable estoppel claim in *Lybbert* arises from the plaintiff's reliance on preservice actions taken by the county defendants. *See id.* There is no comparable pre-service reliance by Unifund here. *Lybbert* does not apply.

Even so, the elements of equitable estoppel are not met here because Unifund can point to no admission, statement, or act by Baker that is inconsistent with her later claim. Unifund has merely shown that Baker used the 5211 address for financial purposes only, years *after* service was attempted. Also, Unifund fails to show that it, like the plaintiff in *Lybbert*, relied on Baker's representations in its decision not to cure the defective service of process. Because Unifund cannot establish all of the elements of equitable estoppel, we hold that Baker is not equitably estopped from asserting insufficient process.

Because service of process was improper, the court issuing the default judgment did not have in personam jurisdiction over Baker. Therefore, the judgment is void. *See Mid-City Materials*, 36 Wn. App. at 484. The effect of a void judgment under CR 60(b)(5) is that it is set aside. *Id.* at 486. As such, the trial court erred when it declined to vacate the default judgment against Baker.

IV.    ATTORNEY FEES

Baker argues that because the trial court erred in not vacating the void default judgment, the trial court also erred in denying her an award of attorney fees and costs. The parties agree that RCW 4.84.250 provides a statutory basis for attorney fees for the prevailing party in this matter, which Unifund pled in its complaint as amounting to less than $10,000. However, while Baker did prevail before us, we cannot conclude that she will ultimately prevail on remand. Accordingly, on remand, the trial court should address the award of attorney fees once it determines the prevailing party.

14

CONCLUSION

We reverse trial court's denial of Baker's motion to vacate and remand for entry of an order vacating the void default order and judgment for lack of service.  On remand, the trial court will address Unifund's claims, any defenses, and the award of attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Maxa, J.

Cruser, A.C.J.