IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEBRA LAUDONE,<br><br>         Appellant,<br><br>   v.<br><br>DAVID AND SUSAN LEWIS, and the marital community composed thereof,<br><br>         Respondents,<br><br>   and<br><br>CITY OF SEATTLE,<br><br>         Defendant.[†] | No. 85431-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — Debra Laudone claims she was injured outside the home of David and Susan Lewis. Prior to Laudone filing suit, a fire destroyed the Lewises' home. Rather than personally serving them, Laudone attempted substitute service at a relative's home where the Lewises briefly had stayed and thereby obtained a default judgment. The Lewises then challenged service and the superior court vacated the default judgment under CR 60(b)(5). Laudone now appeals, arguing CR 60 relief was improper, alongside other procedural irregularities. We affirm.

---

[†] The City of Seattle is not participating in this appeal.

## I.    BACKGROUND

Laudone alleges she fell in January 2019 on an uneven sidewalk adjacent to the Lewises' home (hereinafter the "West Highland Drive address" or "home"). In November 2021, before Laudone filed suit, a fire destroyed their home.  The next month, the Lewises stayed at the home of Susan Lewis' sister (hereinafter the "Coniston Road address") for about three weeks.   Sometime that month (December 2021), the Lewises moved to a friend's guesthouse (hereinafter the "Medina" address).  By April 2022, the Lewises had moved into their new long-term residence (hereinafter the "Eighth Avenue" address).

On December 20, 2021, Laudone filed a complaint in the superior court against inter alia the Lewises.  On February 9, 2022, a process server went to the West Highland Drive address and discovered it was unoccupied and condemned due to the fire.  Laudone then obtained a postal trace indicating the Lewises were forwarding mail to the Coniston Road address.  On March 1, 2022, a process server attempted substitute service at the Coniston Road address.  As will be elaborated on later, the declaration of service states the complaint and summons were delivered to Laurine White, who would later be revealed to be the elderly mother of Susan Lewis.  There is no claim that the Lewises were ever personally served.  The foregoing facts are undisputed.

On January 13, 2023, the superior court entered a default judgment for $806,836.80 and $2,441.23 in costs.  On March 28, 2023, Laudone mailed the default judgment to the Eighth Avenue address.  The Lewises claim this letter was their first notice of Laudone's suit.  In April 2023, the Lewises moved to vacate the

default judgment and to quash service of process under CR 60(b)(5) for insufficient service. In May 2023, the superior court granted the Lewises' motion. The court explained that the "[e]vidence does not show that personal or substitute service of process was properly effected." Laudone timely appeals.

## II.     ANALYSIS

### A.     Sufficiency of Substitute Service

A "court may relieve a party . . . from a final judgment, order, or proceeding" if "[t]he judgment is void." CR 60(b)(5). "A default judgment against a party is void if the court did not have personal jurisdiction over that party." Delex Inc. v. Sukhoi Civil Aircraft Co., 193 Wn. App. 464, 468, 372 P.3d 797 (2016). "A court does not have personal jurisdiction over a party if service of the summons and complaint was improper." Id. "CR 60(b)(5) mandates the court vacate a void judgment upon motion of a party, irrespective of the lapse of time." Persinger v. Persinger, 188 Wn. App. 606, 609, 355 P.3d 291 (2015).

"Generally an appellate court reviews decisions to grant or deny motions to vacate under an abuse of discretion standard." Soratsavong v. Haskell, 133 Wn. App. 77, 84, 134 P.3d 1172 (2006). However, "'[b]ecause courts have a mandatory, nondiscretionary duty to vacate void judgments, a trial court's decision to grant or deny a CR 60(b) motion to vacate a default judgment for want of jurisdiction is reviewed de novo.'" Ahten v. Barnes, 158 Wn. App. 343, 350, 242 P.3d 35 (2010). We also review de novo whether a judgment is void. Castellon v. Rodriguez, 4 Wn. App. 2d 8, 14, 418 P.3d 804 (2018).

"Service of process must comply with constitutional, statutory, and court rule requirements." Walker v. Orkin, LLC, 10 Wn. App. 2d 565, 568, 448 P.3d 815 (2019). "The plaintiff bears the initial burden to prove a prima facie case of sufficient service." Scanlan v. Townsend, 181 Wn.2d 838, 847 336 P.3d 1155 (2014). Then, "[t]he party challenging the service of process must demonstrate by clear and convincing evidence[1] that the service was improper." Id.

The present appeal only concerns statutory service requirements, specifically those for substitute service contained within RCW 4.28.080.

> Service made in the modes provided in this section is personal service. The summons shall be served by delivering a copy thereof . . . to the defendant personally, or by leaving a copy of the summons at the house of his or her *usual abode* with some person of suitable age and discretion then resident therein.

RCW 4.28.080(16) (emphasis added). The term "usual abode" means "a *center of one's domestic activity* such that service left with a family member is reasonably calculated to come to one's attention within the statutory period for a defendant to appear." Matter of Dependency of G.M.W., 24 Wn. App. 2d 96, 119, 519 P.3d 272 (2022) (emphasis added). Further, the served address must have been a center of the party's domestic activity at the "critical time" of service. Blankenship v. Kaldor, 114 Wn. App. 312, 316, 57 P.3d 295 (2002).

Our Supreme Court has held "usual abode" should be "liberally construed to effectuate service and uphold jurisdiction of the court." Sheldon v. Fettig, 129

---

[1] "Clear, cogent, and convincing evidence is a quantum of proof that is less than 'beyond a reasonable doubt,' but more than a mere 'preponderance.'" Tiger Oil Corp v. Taking County, 158 Wn. App. 553, 562, 242 P.3d 936 (2010). Specifically, "[i]t is the quantum of evidence sufficient to convince the fact finder that the fact in issue is 'highly probable.'" Id.

Wn.2d 601, 609, 919 P.2d 1209 (1996) (citing RCW 1.12.010 & CR 1).[2] However, our Supreme Court has also stated that the facts in Sheldon represent the "outer boundaries" of this liberal construction principle. Salts v. Estes, 133 Wn.2d 160, 166, 943 P.2d 275 (1997).

The court in Sheldon considered two candidates for the defendant's "house of usual abode," one in Chicago and the other at her family's home in Seattle. Sheldon, 129 Wn.2d at 606, 612. The defendant primarily lived in Chicago where she was studying to become a flight attendant. Id. at 605. However, the court determined that she still "used the [Seattle] family home for so many of the indicia of one's center of domestic activity" that "it [was] fair to conclude it is a center of her domestic activity." Id. at 610 (including that "[s]he told the government to find her there if necessary for voting purposes, on her car registration, on the car's bill of sale, and on her speeding ticket. She told her car insurer that that was her address. She returned home frequently when not in flight and was even there when Ms. Sheldon's attorney called."). Thus, the court held that substitute service was proper at either location as "a defendant may maintain more than one house of usual abode if each is a center of domestic activity." Id. at 612.

By contrast, this court considered a case where a defendant had moved and leased her home in Federal Way to her daughter before the plaintiff attempted service. Gross v. Evert-Rosenberg, 85 Wn. App. 539, 541, 933 P.2d 439 (1997). This court held that "[a]lthough the tenants in the old home were related to [the

---

[2] The court in Sheldon examined RCW 4.28.080(15), which was the predecessor to RCW 4.28.080(16). Sheldon, 129 Wn.2d at 609; LAWS OF 2015 ch. 15 § 2. The language in both provisions is identical.

defendant], they had a completely different center of domestic activity." Id. at 543. We added that, "[u]nlike the facts in Sheldon, . . . [the defendant] moved to a new home, retaining ownership of the Federal Way house but actually residing in another abode." Id. As such, service at the Federal Way address was improper. Id.

Here, the Lewises each submitted declarations, which were unrebutted, stating they had moved from the Coniston Road address in December 2021, months before the substitute service in March 2022. Importantly, the owner of the Medina guesthouse signed their own declaration confirming the Lewises had moved to the guesthouse in December 2021. Indeed, Laudone grants on appeal that she was "in total agreement that respondents were living at the Medina residence at the time of service. That aspect of their declarations is clear and unrebutted, and conceded." Together, this is sufficient evidence that the residence at the Coniston Road address was not the center of the Lewises' domestic activity at the "critical time." Blankenship, 114 Wn. App. at 316.

Even so, Laudone argues the Lewises failed to rebut her evidence by clear and convincing evidence because of two countervailing pieces of evidence. The first piece of evidence she offers is the declaration of the process server, which states

> on 3/1/2022 at 12:05 PM at the address of [Coniston Road], Seattle, within King County, WA, the undersigned duly served the following document(s): Summons and Complaint for Damages: Complaint for Damages in the above titled action upon David and Susan Lewis, by then and there personally delivering 2 true and correct set(s) of the above documents into the hands of and leaving the same with Laurine White, *Co-Resident* to Both a person of suitable age and discretion, who is a resident therein.

6

The second piece of evidence Laudone offers is the postal trace result, listing the Coniston Road location as the Lewises' mailing address.[3]

Taking the second first, we have held that a postal trace alone is not determinative of the sufficiency of service, as Laudone suggests. In fact, "the use of a particular address for a limited purpose is not a critical factor in determining a center of domestic activity." Streeter-Dybdahl v. Nguyet Huynh, 157 Wn. App. 408, 414, 236 P.3d 986 (2010) (where the only evidence of defendant's residence was that the address in question was registered with the Department of Licensing). This court also noted a defendant's "mail is easily forwarded" as an "illustration[] highlight[ing] the ambiguous nature" of evidence where "other reasonable explanations are readily apparent." Vukich v. Anderson, 97 Wn. App. 684, 690-91, 985 P.2d 952 (1999). In other words, a postal trace alone, as here, may be ambiguous evidence of a party's usual abode.

Laudone's reliance on the declaration of the process server is also unavailing. Laudone asserts that the declaration shows that White "identified herself as a co-resident of defendants." That is slightly but importantly inaccurate. In fact, the declaration of service fails to indicate White affirmatively asserted she was a "co-resident" of the Lewises. Instead, the statement that White and the Lewises are "co-resident[s]" was presented in a conclusory manner, with no explanation as to the origin of that assertion.

---

[3] Laudone also urges us to consider her due diligence in finding the Lewises' new address. However, as previously stated by this court, "the crux of the issue is the 'usual mailing address,' not due diligence." Goettemoeller v. Twist, 161 Wn. App. 103, 110, 253 P.3d 405 (2011).

Ultimately, the present appeal is also more similar to Gross than Sheldon. First, the Lewises' attachment to the Coniston Road address lacked the numerous indicia of domestic activity seen in Sheldon. 129 Wn.2d at 610 (including voting registration, car registration, insurance, and frequent ongoing visits at the time of service). Instead, the Lewises' only connections to the Coniston Road address was a short emergency stay with their relatives, and the simple fact that the Lewises temporarily forwarded their mail there, but for a duration of time unidentified in the record.

Second, the Lewises have a weaker connection to the Coniston Road address than the connections which were found to be insufficient in Gross. 85 Wn. App. at 541. There, the defendant at least owned the property where service was attempted, which it leased it to relatives. Id. There is nothing in the record suggesting Lewises had any ownership interest in the Coniston Road address. And, even if they had once owned the Coniston Road property, we have held that, where a defendant "no longer had an ownership interest in that house at that time, [that] demonstrate[es] even less of a connection to the residence than in Gross." Streeter-Dybdahl, 157 Wn. App. at 414.[4]

---

[4] The present case is also distinguishable from Northwick v. Long, 192 Wn. App. 256, 364 P.3d 1067 (2015). There, the defendant's father submitted a declaration claiming the defendant did not live at the serviced address. Id. at 264. However, this evidence was undermined by the process server's deposition testimony stating the father had explicitly confirmed twice the defendant lived at the serviced address. Id. In the present appeal, there is no such deposition or other testimony directly contradicting the Lewises' declarations. As already discussed, the postal trace alone was ambiguous and the declaration of service does not indicate White affirmatively asserted she was a "co-resident" of the Lewises.

From the above, the Lewises' evidence and "statements are internally consistent and directly refute [Laudone's] evidence. In other words it is clear and convincing." Vukich, 97 Wn. App. at 690. As such, we hold the superior court properly vacated the default judgment.[5]

B.      Evidentiary Hearing and Findings

Laudone next argues the superior court abused its discretion by not holding a hearing or permitting oral argument on the motion to vacate. Indeed, "[a] court may abuse its discretion by failing to hold an evidentiary hearing when affidavits present an issue of fact whose resolution requires a determination of witness credibility." Woodruff v. Spence, 76 Wn. App. 207, 210, 883 P.2d 936 (1994).

Laudone, however, never requested a hearing and we have previously held that a party that "made no request to present live testimony . . . waived his argument that the fact dispute regarding service could not be resolved on conflicting affidavits." Leen v. Demopolis, 62 Wn. App. 473, 478-79, 815 P.2d 269 (1991). Although so challenged by the Lewises, Laudone offered no counter argument in reply.

Even if Laudone had requested a hearing, her invocation of Woodruff and Northwick is unpersuasive. As indicated by the permissive language of both cases, the decision to hold oral argument was squarely within the court's discretion. Woodruff, 76 Wn. App. at 210 ("The court, in its discretion, may direct

---

[5] The parties also briefly discuss whether White was a person of suitable age and discretion then resident at the Coniston Road address despite her age and health. As we conclude that address was not the Lewises' place of usual abode, we need not address this argument.

that an issue raised by motion be heard on oral testimony if that is necessary for a just determination."); Northwick v. Long, 192 Wn. App. 256, 267, 364 P.3d 1067 (2015) (same). Additionally, the court rule governing procedures for vacating judgments merely requires a party file a motion supported by an affidavit with no mention of oral argument. CR 60(e)(1).

Laudone also fails to explain, given all the undisputed facts in the Lewises' favor, why it was necessary for the court to weigh in-court testimony, witness credibility, or other competing evidence per Woodruff, 76 Wn. App. at 210. Indeed, White had passed by the time the court heard the motion to vacate and, with her, the only possibly contested factual question as to what she may have told the process server. And finally, Laudone's claim that the court's decision was made with a "total lack of reliable evidence" is simply inconsistent with the earlier discussed record, declarations, and Laudone's own concessions.[6]

As such, we hold that the court did not abuse its discretion by its decision not to hold a hearing or oral argument on the motion to vacate.

---

[6] Laudone also argues that the court erred by not issuing written findings. We need not reach this argument as "[w]hen the findings and conclusions are missing or are defective, the proper remedy is to remand for entry of adequate ones *unless the appellate court is persuaded that sufficient basis for review is present in the record*." Columbia State Bank v. Invicta Law Grp. PLLC, 199 Wn. App. 306, 323, 402 P.3d 330 (2017) (emphasis added). Here, we are so persuaded.

### III.   CONCLUSION

For the reasons above, we affirm the superior court's order vacating the default judgment.

Díaz, J.

WE CONCUR:

Chung, J.

Dwyer, J.